**E. LEITZ, Inc., a corporation of New York, Plaintiff,**

v.

**Robert C. WATSON, Commissioner of Patents, Defendant.**

Civ. A. No. 3426–55.

United States District Court
District of Columbia.
May 24, 1957.

Richard P. Schulze, Washington, D. C., Donald Dunn, Alexander & Green, John Vaughan Groner, Delavan Smith, Fish, Richardson & Neave, New York City, of counsel, for plaintiff.

C. W. Moore, Washington, D. C., Solicitor, U. S. Patent Office, for defendant.

KEECH, District Judge.

This is an action by plaintiff, as owner in the United States, to compel registration on the principal register, under the 1946 Act (15 U.S.C.A. § 1051), of the trademark "Leitz", displayed in script with a paraph of the initial letter extending beneath the entire word, for photographic appliances and supplies, op-

tical goods, such as binoculars and microscopes, and measuring and scientific appliances, such as micro metallographs, spectroscopes, colorimeters, titrators, and carbon meters.

The history of the trademark in the United States is undisputed. Prior to 1916 Ernst Leitz, owner of an optical works in Wetzlar, Germany, maintained a branch in New York. On April 22, 1916, E. Leitz, Inc., (hereinafter referred to as Leitz-1916) was incorporated in New York. One of the purposes set forth in its certificate of incorporation was

> "To manufacture, buy, sell and deal in microscopes and bacteriological instruments * * *."

On April 25, 1916, Ernst Leitz, by A. Traeger, his attorney in fact, who had managed Ernst Leitz' New York branch, conveyed to Leitz-1916, its successors and assigns, by bill of sale,

> "the business now conducted by me [Ernst Leitz] at No. 30 East 18th Street, Borough of Manhattan, City of New York, together with all contracts, patents, trade marks, * * * all goods, wares and merchandise, * * * good will, and property of every kind and nature belonging to me or used by me in this business * * *."

The "Leitz" mark, which had been adopted and registered in Germany by Ernst Leitz,[1] was one of those transferred in the United States. From that date to the present, neither Ernst Leitz individually nor the German corporation, Ernst Leitz G.m.b.H., (hereinafter referred to as German Leitz) has done any direct business in the United States.

Thereafter, Leitz-1916, in addition to acting as exclusive importer from Germany of the goods of German Leitz and operating a repair department for such goods, commenced the manufacture in the United States of certain scientific instruments and parts, and also distributed the goods of many other manufacturers. All of this business was done by it as principal and under its trade name, and the larger scientific appliances manufactured in the United States bore the trademark "Leitz" in script form.

During the first World War, Leitz-1916 was seized by the Alien Property Custodian. Alfred Traeger was retained as manager of Leitz-1916, and in 1920 he purchased the company from the Alien Property Custodian. Leitz-1916 continued to carry on the business of manufacturers, wholesalers, importers, and exporters.

About 1925 Leitz-1916 introduced the Leica camera in the United States, and about 1935 it closed out its line of laboratory glassware.

By 1935 all of the stock in Leitz-1916 had been transferred to Ernst Leitz individually or Ernst Leitz G.m.b.H. In 1941 E. Leitz, Inc. (hereinafter referred to as Leitz-1941), was incorporated under the laws of the state of New York,

> "To manufacture, buy, sell and deal in microscopes and bacteriological instruments and supplies, and photographic equipment and supplies of any and every character, * * *"

and "to acquire the property, rights, privileges and franchises and the good will and name of" Leitz-1916. Thereafter, pursuant to authorization by all the stockholders of Leitz-1916, namely, Ernst Leitz individually and German Leitz, Leitz-1916 conveyed to Leitz-1941:

> "All of the property, rights, privileges and franchises of the Vendor and the *Vendor's good will,* and right to use the corporate name E. Leitz Inc., and including, without in any manner limiting the generality of any of the foregoing, the *patents, trademarks, patent applications and unpatented inventions and discoveries and secret processes owned by the Vendor;* all of the books and records of the Vendor; all furniture, fixtures and equipment in the

---

1. German Registration No. 197,860, June 12, 1914. This German trademark was transferred to Ernst Leitz G.m.b.H. in 1930.

office, store-rooms, demonstration rooms and showrooms and storage places of the Vendor; *all merchandise, manufactured or in process of manufacture, all raw material,* wherever located, in offices or other places of business of the Vendor, within and without the State of New York; any and all merchandise or other property in bonded warehouses or in the Foreign Trade Zone on Staten Island; all shelving; *all machinery and equipment in the work-shop and factory of the Vendor;* all accessories; * * * and any and every item of assets or property of the Vendor, real or personal, tangible or intangible, realized or inchoate, of whatsoever nature and wheresoever situate." (Emphasis supplied.)

During World War II, pursuant to the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq., by vesting orders dated August 24, 1942, all of the capital stock of both Leitz-1916 and Leitz-1941 was seized by the Alien Property Custodian, who actively operated the company during the war, making lenses for the Signal Corps, as well as various other articles on government order. All of these products were marked with the name "Leitz". During this period Leitz-1941 further developed highly specialized laboratory and scientific products, manufacturing and marketing, under the "Leitz" mark, items such as a carbon meter, colorimeter, and titrator.

The trademark "Leitz", in identical form with the mark here in issue, was registered by Leitz-1941 under the 1920 Act on October 22, 1946 (Trademark No. 424,796).[2]

Upon termination of the war, commercial relations were re-established with German Leitz, and distribution of German-made Leitz products was resumed by Leitz-1941, which also con-tinued the manufacture and sale, under the trademark "Leitz", of the products developed and manufactured by it. This was the situation as of June, 1950, when Leitz-1941, still controlled and operated by the Alien Property Custodian, filed the application to register the mark "Leitz" here in issue.

On August 30, 1951, in anticipation of the sale of the stock of Leitz-1941 and to cut off any possibility of any "reversionary" interest that German Leitz might have in the United States in the trademarks of Leitz-1941, the Alien Property Custodian issued a vesting order specifically vesting any and all such interests in the trademarks of Leitz-1941. Inasmuch as this order mentioned only "registered marks", another order was issued February 26, 1952, vesting every interest German Leitz might have in any and all trademarks and trade names appurtenant to the business of Leitz-1941, specifically including the trademark here in issue.

In August, 1952, the Alien Property Custodian sold all of the capital stock in Leitz-1941 to Dunhill International, Inc., which in turn, on October 1, 1952, conveyed all of the stock to the present ownership.

Under the present ownership, Leitz-1941 has continued as importer and distributor of the products of German Leitz, as well as manufacturer and distributor of scientific instruments developed in the United States by it, and distribution of certain items purchased from sources other than German Leitz, including, among others, a Canadian Leitz. It was estimated that at the present time German Leitz goods accounts for between seventy and eighty percent of the dollar volume of Leitz-1941's business.

Registration of the trademark has been denied on the ground that plaintiff is not the owner of the mark. The

2. Under Sec. 47(b) of the 1946 Act, after July 5, 1947, registrations under the 1920 Act became subject to and entitled to the benefits of the 1946 Act relating to marks registered on the supplemental register, with a proviso that those marks eligible might also be registered on the principal register under the 1946 Act. See note following 15 U.S.C.A. § 1051.

Assistant Commissioner of Patents has held that the Alien Property Custodian acquired and could convey to plaintiff's assignor no interest in the trademark "Leitz", which was the world-wide symbol of the goodwill of German Leitz and had its situs in Wetzlar, Germany, where the manufacturing business of German Leitz has for many years been conducted. The Assistant Commissioner further held that there was no proof of the use by plaintiff of the trademark "Leitz" on goods manufactured by it in the United States, hence the mark was not one adopted and used by plaintiff to identify its goods and distinguish them from the goods of others.

In notifying plaintiff of the final denial of registration, the Head of Trade-Mark Operation stated that, even though title to the mark in this country was vested in the Attorney General of the United States and subsequently assigned to plaintiff, the use of the mark "Leitz" on goods other than those originating with German Leitz would manifestly be deceptive and a false designation of origin.

The plaintiff has adduced before this court substantial evidence of the sale by Leitz-1941 and its predecessor, Leitz-1916, of scientific instruments manufactured by them in the United States and proof of the use on such products and in their catalogs of the trademark here in issue since about 1930. This is corroborated by the terms of the bill of sale from Leitz-1916 to Leitz-1941, which specifically names "merchandise, manufactured or in process of manufacture", "raw material", and "all machinery and equipment in the workshop and factory of the Vendor", as included among the assets, and in terms transferred the right to use the trademark. There was also evidence that plaintiff furnishes its own written guarantee of German Leitz products imported and sold by it, and that retailers in the camera business look to plaintiff in New York in all matters concerning Leitz products of whatever origin sold in the United States.

■■ It is elementary that a trademark is the symbol of the goodwill of the business in which it is used, and that it may not be assigned in gross. United Drug Company v. Theodore Rectanus Company, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141. On the other hand, a trademark is a property right which may validly be sold with the business to which it is appurtenant (Kidd v. Johnson, 100 U.S. 617, 25 L.Ed. 769), sold for use in one segment of a business, even though it be not yet established (Coca-Cola Bottling Co. v. Coca-Cola Co., D. C., 269 F. 796), assigned for a term of years with an exclusive agency in a particular geographical location (Scandinavia Belting Co. v. Asbestos & Rubber Works, 2 Cir., 257 F. 937, 954), or sold by a foreign manufacturer and vendor together with his business and goodwill in the United States (A. Bourjois & Co., Inc., v. Katzel, 260 U.S. 689, 691, 43 S.Ct. 244, 67 L.Ed. 464).

■ The trademark does not necessarily signify the goodwill of the manufacturer. The purchaser of the United States business of a foreign manufacturer and vendor, including goodwill and trademarks, has a right to protect his trademark in the United States against the sale of the same product from the same manufacturer by others, even if it be by the manufacturer-owner of the trademark abroad, where the product is understood as emanating in the United States from or through the United States trademark owner. A. Bourjois & Co., Inc., v. Katzel, supra.

This court holds the fact situation in the instant case even stronger than the Bourjois case in support of the validity of the trademark assignment. Here, the business of Leitz-1916, transfer of which to Leitz-1941 was authorized by Ernst Leitz, both individually and on behalf of the German corporation, was not confined to importation of German Leitz products, but included the manufacture in the United States of products bearing the Leitz trademark and resale of items purchased from other sources.

Nor is the sale of the business with trademarks in the instant case distinguishable in principle from the assign-

ments in the Coca-Cola and Scandinavia cases, supra.

Counsel for the defendant, in his argument that a trademark must attach to goodwill at the situs of the original factory, has attempted to distinguish the Bourjois case on two bases: (1) that decision was prior to enactment of the 1946 Act, which contains new definitions; and (2) the trademark in the Bourjois case had come to be understood by the public as meaning goods "coming from" the United States trademark owner.

As to the first ground, the 1946 Act defines a trademark as "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or *merchant* to identify his goods and distinguish them from those manufactured or *sold* by others" (15 U.S. C.A. § 1127). The trademark in issue has been so adopted by plaintiff and its predecessors to identify goods manufactured or distributed by them in the United States. Section § 10 of the Act (15 U.S.C.A. § 1060) provides that a trademark is assignable with the goodwill of the business in which the mark is used, or "with that *part of the goodwill* of the business connected with the use of and symbolized by the mark * * *." Assignability of United States rights is further evidenced by Section 44(f) of the Act (15 U.S.C.A. § 1126(f), which provides that registration in the United States of foreign trademarks which are registered or for which application for registration has been filed in the country of origin, "shall be independent of the registration in the country of origin and the duration, validity, or *transfer* in the United States of such registration shall be governed by the provisions of" the 1946 Act.[3] The 1946 statute therefore does not detract from the present validity of the Bourjois decision.

As to the second alleged ground of distinction, that the public understood the Bourjois goods as "coming from" the United States trademark owner, the Bourjois trademark plainly disclosed that the goods originated with the French manufacturer and were merely repacked and distributed by the United States firm. The Supreme Court held, however, that the trademark was *owned in the United States* by the distributor, and that, since the public understood the goods came through the plaintiff although not made by it, the trademark was sold with the goodwill of the business bought by the distributor, which staked its reputation upon the character of the goods it sold (260 U.S. at page 692, 43 S.Ct. at page 245).

The evidence before the court in the instant case is that plaintiff bought the United States business, together with the goodwill and trademark of the original owner, that those in the business of retailing Leitz products manufactured in the United States or German Leitz products lawfully imported into the United States for sale understand them to have been produced or distributed in the United States by the plaintiff, Leitz-1941,[4] and that plaintiff stands back of all merchandise sold by it, furnishing its own written guarantee on German-Leitz cameras, among other items.

The decisions in Societe Vinicole de Champagne v. Mumm Champagne & Importation Co., D.C., 10 F.Supp. 289 and D.C., 13 F.Supp. 575, relied upon by the defendant, are not in point. There it was held that the Alien Property Custodian of the United States acquired no interest in the goodwill and trademarks of G. H. Mumm & Co. by seizure of certain assets of its agency in the United States, and that the goodwill and trademarks in all countries had been sold by the French Government together with

3. This is in conformity with the 1934 London revision of the 1883 International Convention for the Protection of Industrial Property, a treaty to which the United States is a party. See 53 Stat. 1748.

4. Defense counsel in his argument brought

out that plaintiff had consented to the importation by another firm of certain German Leitz products not carried by plaintiff. This consent would not affect the general understanding as to the United States importation of German Leitz products by Leitz–1941.

the parent business. In that case, however, there had been no prior assignment of the business, together with goodwill and trademarks, in the United States, the American corporation having been organized and maintained merely as a local sales agency.

■ The court therefore holds that plaintiff is the owner of the trademark in issue in the United States.

Further, if the public ever understood or now understands all products bearing the "Leitz" mark as having originated with German Leitz, its understanding was and is erroneous. Therefore, no deception will be created by granting registration of the trademark in the United States to the plaintiff.

For the foregoing reasons, the court will sign a judgment directing the registration of the trademark sought. Counsel will prepare and submit promptly appropriate findings of fact, conclusions of law, and order.