Robert C. WATSON, Commissioner of Patents, Appellant,

v.

E. LEITZ, Inc., Appellee.

Nos. 14158, 14159.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 18, 1958.

Decided March 27, 1958.

Mr. J. Schimmel, Washington, D. C., with whom Mr. Clarence W. Moore, Sol., U. S. Patent Office, was on the brief, for appellant.

Mr. John Vaughan Groner, New York City, with whom Messrs. Donald M. Dunn and Delavan Smith, New York City, and Richard P. Schulze, Washington, D. C., were on the brief, for appellee.

Before PRETTYMAN and BURGER, Circuit Judges, and MADDEN, Judge of the United States Court of Claims.*

MADDEN, Judge.

The appellee in 1950 filed an application, pursuant to the provisions of the Act of July 5, 1946, 15 U.S.C.A. § 1051, for the registration of the trademark here in issue. After extended proceedings in the Patent Office, the Assistant Commisioner of Patents denied the application on the ground that the applicant, the appellee here, was not the owner of the trademark. The applicant then filed suit in the District Court under section 1071 of Title 15 and section 145 of Title 35 of the United States Code, praying for a decree adjudging that it was entitled to registration of the mark and authorizing and directing the Commissioner of Patents to register the mark. The District Court entered the decree prayed for. 113 U.S.P.Q. 409. No. 14158 is the Commissioner's appeal from that judgment. Thereafter the Commissioner filed a motion under Fed.

* Sitting by designation pursuant to the provision of 28 U.S.C. § 291(a).

Rules Civ.Proc. Rule 60(b), 28 U.S.C.A. for relief from the judgment on the ground that material facts had been withheld in the prior proceedings. The District Court denied that motion. No. 14159 is the Commissioner's appeal from that denial.

If the appellee was the owner of the trademark in question, it was entitled to have it registered, and to have the very substantial benefits which result from registration. The appellant's position is and has been that the appellee is not the owner of the mark.

Ernest Leitz G. m. b. H., Wetzlar, Germany, hereinafter called Leitz-Wetzlar, manufactured and sold cameras, photographic equipment, and other optical and laboratory equipment. It was apparently a proprietorship with limited liability. In 1914 Leitz-Wetzlar registered in the German Patent Office the trademark "Leitz". For many years before 1916 Leitz-Wetzlar had had a branch in New York City which handled its products. In 1916 Leitz-Wetzlar caused to be formed a New York corporation, named E. Leitz, Inc. and conveyed to that corporation

> "the business now conducted by me at No. 30 East 18th Street, Borough of Manhattan, City of New York, together with all contracts, patents, trademarks * * * and all goods, wares, and merchandise * * * goodwill, and property of every kind and nature belonging to me or used by me in this business * * *."

The new corporation, herein called Leitz-1916, was, as its predecessor, the New York branch of Leitz-Wetzlar had been, the outlet in the United States of the products of Leitz-Wetzlar, and it operated a repair department for those products. It later commenced the manufacture in the United States of some scientific instruments and parts, and it placed upon them the trademark "E. Leitz", or "Leitz", which was the same mark used on the goods manufactured by Leitz-Wetzlar.

During the First World War Leitz-1916 was seized by the Alien Property Custodian, but it was restored to private ownership after the war, and the business was carried on as before. About 1925 Leitz-1916 introduced the Leica camera, a product of Leitz-Wetzlar, into the United States. About 1929 or 1930 Leitz-1916 began to apply the trademark "Leitz" in the exact script form for which it applied for registration in the proceedings here under review, to appliances developed and manufactured by it in the United States, as well as to those manufactured by Leitz-Wetzlar.

By about 1935 all of the stock of Leitz-1916 was owned by Leitz-Wetzlar. It would seem that the corporation had been effectively controlled by Leitz-Wetzlar from the time of its formation in 1916, although the exact nature of the relationship between the formal owners of the stock and Leitz-Wetzlar during the intervening years is not shown by the record. In any event, there is no evidence of any disagreement between Leitz-1916 and Leitz-Wetzlar as to the former's activities in manufacturing or acquiring other products and selling them with the Leitz mark.

In 1941 the assets of Leitz-1916 were transferred to a newly-formed corporation, again named E. Leitz, Inc., which corporation is the present appellee. Leitz-1941 paid Leitz-1916 for its assets by issuing to it the stock of Leitz-1941. Since Leitz-Wetzlar was the sole stockholder of Leitz-1916, it remained, through that stockholding, the sole owner of Leitz-1941. The bill of sale of the assets of Leitz-1916 to Leitz-1941 mentioned no specific trademarks, but transferred trademarks and goodwill in general terms.

In 1942 all stock of both Leitz-1916 and Leitz-1941 was seized by the Office of Alien Property, because of its German ownership. During the war Leitz-1941 manufactured equipment for the Signal Corps of the Army, and marked its product with the word "Leitz". The Alien Property Custodian caused or permitted

Leitz-1941 to apply for and receive a trademark registration for a trademark in the exact form of script which is at issue in this case. The application was made in 1944 and the registration was issued in 1946. This registration was of the kind authorized by the Act of March 19, 1920, 41 Stat. 533, and did not give the holder the protection afforded by registration under the Act of July 5, 1946, the kind of registration sought in the proceedings here under review. See Speed Products Co., Inc., v. Tinnerman Products, Inc., 2 Cir., 179 F.2d 778, for discussion of this distinction.

The Attorney General of the United States, as Alien Property Custodian, issued a prospectus describing the assets of Leitz-1941, for the purpose of inducing persons to bid for its stock. This prospectus stated that the company owned legal title to "the trade names, trademarks and registrations in the United States," both for goods manufactured by itself and for goods imported from Leitz-Wetzlar, but stated further that no opinion was expressed as to whether this ownership would prevent Leitz-Wetzlar or others authorized by it from marketing its products in the United States under their trade names, which were identical with those of Leitz-1941.

Supplementing the original vesting order issued in 1942, the Alien Property Custodian issued further vesting orders including one issued on February 26, 1952, which vested every interest, including reversionary interests, which Leitz-Wetzlar might have in any and all trademarks and trade names appurtenant to the business of Leitz-1941, and specifically including the trademark having the distinctive script here in issue. He then conveyed the rights so vested to Leitz-1941.

In 1952 the Alien Property Custodian sold all the capital stock of Leitz-1941 to Dunhill International, Inc. Dunhill sold the stock to Synthetic Nitrogen Products Corp. The present ownership of the stock derives from Synthetic Nitrogen Products Corporation.

In 1950, while the stock of Leitz-1941 was owned by the Alien Property Custodian, the application for the trademark registration here in issue was filed by the corporation, and has continued to be pressed regardless of the changes in ownership of the corporation's stock. As we have seen, the application was rejected by the Patent Office on the ground that the applicant was not the owner of the trademark sought to be registered.

When Leitz-Wetzlar marketed its products through its agents in the United States, it of course owned its trademarks. The appellant's position is that the mere agency relation continued, in substance, down to the time of the application for registration in 1950. The creation by Leitz-Wetzlar of Leitz-1916, its probable control of that corporation until about 1935 and its undoubted control of it thereafter, its creation and control of Leitz-1941 until the vesting of the stock by the Alien Property Custodian in 1942, all of these facts indicate a relationship akin to agency. However, when Leitz-1916 was created and the New York assets including goodwill and trademarks were conveyed to it, it was obviously intended by the parties that the new legal entity should own, in its marketing area, the United States, the rights which Leitz-Wetzlar had had in that area when it marketed its products there through agents. The lodging of those rights in the American corporation would facilitate their enforcement against infringers in its market area.

As we have said, the appellant's contention is that the ownership of the trademark in question was and is in Leitz-Wetzlar, from which it would necessarily follow that the appellee was not entitled to register it. But the ownership of the mark, so far as concerns the percentage of the goods manufactured by the appellee itself, or secured from other manufacturers than Leitz-Wetzlar, could not possibly have been in Leitz-Wetzlar. It did not manufacture or sell these goods, nor have anything whatever to do with them. It would have been de-

ceptive and misleading to have represented by a trademark or otherwise, that they came from Leitz-Wetzlar.

As to the ownership of the trademark in the United States, as the mark would be applied to the goods imported from Leitz-Wetzlar, there can be no doubt that Leitz-Wetzlar intended and attempted to transfer that ownership to Leitz-1916. The language in the 1916 bill of sale could have referred to nothing else. That intent continued through the entire period of Leitz-1916's ownership and operation of the United States business. From sometime early in the 1930's, Leitz-1916 was using the trademark, Leitz, sometimes in the same script form in which Leitz-Wetzlar used it in Germany, and was using it on both the American-made goods and the German-made goods. Yet Leitz-Wetzlar made no protest or objection, though during the latter years of the 1930's it completely owned and controlled Leitz-1916 and could have instantly put a stop to any conduct which violated its 1916 intent. The conveyance in 1941 from Leitz-1916 to Leitz-1941 was a conveyance of everything that Leitz-1916 owned. It, then, neither added to nor subtracted from the assets, tangible and intangible, which had been owned by Leitz-1916.

The appellant must, then, in order to sustain his contention of lack of ownership of the trademark by the appellee, show that, regardless of the intent of the parties, it was legally impossible to place that ownership in the appellee. In the case of *a jus in re aliena* the law does not permit an easement in the land of one person which easement was created as an appurtenance to the land of another person, to be separated from the dominant land and given a separate existence in an owner who does not own the dominant land. The appellant makes a somewhat similar contention with regard to the trademark here in question. He says that it is an appurtenance to the Wetzlar factory and it is not possible for it to have a legal existence separate from that factory.

A trademark must be appurtenant to some enterprise which is related to the marketing of goods. It is both philosophically and legally impossible for it to exist in gross. But a merchant as well as a manufacturer may have a trademark. 15 U.S.C.A. § 1127. As a merchant, Leitz-1916 had a right to use a mark which would become a symbol of the quality of its goods, and of its responsibility for them. Leitz-Wetzlar was willing that Leitz-1916 should use the same mark in the United States which Leitz-Wetzlar used elsewhere. Such an arrangement was held valid in A. Bourjois & Company, Inc., v. Katzel, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464. See also Scandinavia Belting Co. v. Asbestos and Rubber Works, 2 Cir., 257 F. 937, 954.

Leitz-1916 had the right to use the trademark and did use it, as its own mark. Leitz-1941, the appellee, acquired the same right by conveyance from Leitz-1916. The changes of ownership of the stock of Leitz-1941, from Leitz-Wetzlar, through the Alien Property Custodian and Dunhill to the present owner, did not increase or decrease the assets of the corporation, including its goodwill and trademarks.

The Alien Property Custodian, having in 1942 seized the stock of Leitz-1941, issued further vesting orders in 1951 and 1952, apparently for the purpose of clarifying the title and making the stock saleable to a better advantage. The 1952 vesting purported to vest any reversionary interest which Leitz-Wetzlar might have in trademarks appurtenant to the business of Leitz-1941. This move was apparently made out of an abundance of caution, in view of the possibility that the grant of Leitz-Wetzlar to Leitz-1916 might be held to create only a determinable right to the trademarks, which right would end if, for example, the grantee ceased to be controlled by the grantor. If the right had been a determinable one, it may be that the Alien Property Custodian's attempt to seize the reversion would have been ineffective

since the reversion would perhaps have been in gross. We need not decide that question, since we think the 1916 conveyance was absolute.

The conveyance of the trademark by Leitz-Wetzlar to Leitz-1916, in 1916, without limit as to time, and without a contract defining the rights and duties of the parties with regard to the Leitz-Wetzlar products was an unusual and probably an improvident thing to do. It must have contemplated that Leitz-Wetzlar would control Leitz-1916, which it probably did from the beginning and certainly did from about 1935. Having conveyed the trademark to a separate legal entity in the United States, Leitz-Wetzlar exposed itself to the danger that, in the event of war, the property in the United States would be seized and sold into independent ownership. That is what happened, with its necessary logical and legal consequences.

We do not decide what would be the consequences if the appellee should use its trademark unfairly to market inferior goods and mislead purchasers to think that they were manufactured by Leitz-Wetzlar when in fact they were not. Section 1119 of Title 15 of the United States Code lodges in the courts the power to order the cancellation of a registration if the trademark is used unfairly.

Appeal No. 14159 is from the District Court's denial of the appellant's motion under Rule 60(b) seeking relief from the judgment ordering the registration of the trademark. The motion was grounded upon the assertion that the appellee had withheld from the court certain facts and documents relevant to the question of ownership of the trademark, and that additional evidence had become available.

The agreement of November 22, 1923, between Leitz-1916 and Leitz-Wetzlar seems to us to throw no light on our question. It seems to be a conventional agreement that Leitz-1916 should act as a sales agent for Leitz-Wetzlar in the United States, should diligently cultivate the market, and should not handle other goods which would compete with those of Leitz-Wetzlar. It is consistent with the ownership by Leitz-1916 of the trademarks appurtenant to its market area.

The agreement of September 13, 1952, between Manca, Inc., the present owner of the stock of appellee, and Leitz-Wetzlar is an interesting document which should have been disclosed by the appellee to the Patent Office, and to the District Court. This agreement made Manca, Inc. the exclusive sales agent in the United States for the Leitz-Wetzlar's trademarked products, with certain exceptions not here important. It said that Manca conceded that it had "no present right to any trademark heretofore or presently used for the products of Leitz * * * ". But it said "In the event Manca acquires E. Leitz, Inc., Leitz-1941, or any trademark owned by it applying to products of Leitz (Leitz-Wetzlar), Manca agrees that it will use such trademarks so acquired only in the manner and to the extent heretofore used by E. Leitz, Inc." The agreement was for a term of 10 years, renewable only by the agreement of both parties.

This agreement, made by the corporation which became and is the sole owner of the stock of appellee, would, in one of its parts, indicate a lack of ownership by appellee of trademarks relating to Leitz-Wetzlar products. But then it goes on to expressly refer to such trademarks owned by appellee. It is another example of the indirections engaged in by Leitz-Wetzlar and its American outlets which tend to confuse our problem.

We have considered the other matters put forth by the appellant as grounds for his motion for relief from the judgment, and we conclude that it was well within the discretion of the District Court to deny the motion.

No. 14158 affirmed.

No. 14159 affirmed.