**UNCAS MANUFACTURING COMPANY,**
Plaintiff,

v.

**CLARK & COOMBS COMPANY,**
Defendant.

Civ. A. No. 2472.

United States District Court
D. Rhode Island.

Jan. 9, 1962.

Herbert B. Barlow, Herbert B. Barlow, Jr. (Barlow & Barlow), Providence, R. I., for plaintiff.

Jerome B. Spunt, Providence, R. I., of counsel, Andrew P. Quinn, Letts & Quinn, Providence, R. I., for defendant.

DAY, District Judge.

This is an action for alleged infringement of a trademark under which the plaintiff claims the exclusive right to the use of the word "BARODA". Plaintiff seeks a permanent injunction against the defendant restraining it from using the word "BARODA" in connection with its products and an accounting for profits and damages.

Defendant in its answer admits the use of the mark "IMPORTED BARODA", denies its use infringes any trademark rights plaintiff may have, and contends any trademark rights to the word "BARODA" that may have existed have been lost by abandonment by the plaintiff's predecessors in interest, by their acquiescence in the use of said word by competitors, by its loss of distinctiveness and further, that the purported assignment of said trademark to the plaintiff was invalid and conferred no rights of ownership upon it. In addition, the defendant in its counterclaim seeks the cancellation of said trademark, damages for unfair competition by the plaintiff and an injunction restraining the plaintiff from claiming or asserting the exclusive right to the use of the word "BARODA".

Jurisdiction of this Court exists under the provisions of the Lanham Act, 15 U.S.C.A. §§ 1051–1127, and 28 U.S.C.A. § 1338(a).

Plaintiff and defendant are corporations organized under the laws of the State of Rhode Island.

The evidence establishes that the trademark rights upon which the plaintiff relies were first claimed by The R. L. Griffith & Sons Company (hereinafter called Griffith), a Rhode Island corporation. Griffith caused said trademark to be registered in the United States Patent Office on February 27, 1951 as Trade Mark No. 538,643 for use on tag bearing the words "The BARODA Gem", to be applied to imitation stones sold alone or mounted in jewelry such as finger rings, etc. It is undisputed that the trademark wherever used has been applied to 32 facet, metal capped, white imitation stones set in finger rings. In its application for the registration of said trademark Griffith claimed use of the word "BARODA" since 1912 and ownership of a prior federal registration in 1934.

From the evidence it appears that Griffith, prior to 1950, had a substantial business comprising the manufacture and sale of finger rings bearing said white imitation stones and marked "BARODA". However, it is indisputably clear that between 1950 and 1953 this part of its business continually declined in volume to the point where after 1953 it became practically nonexistent. There is no evidence to indicate that Griffith ever advertised its "BARODA" marked rings, and its failure to adopt modern styling in its ring mountings apparently destroyed all demand for them. Its last sale of such rings appears to have been made on April 16, 1956 and consisted of a sale of samples thereof with a value of $4.50. There was no credible evidence of any sales by it of such rings after April 16, 1956.

In 1955 the defendant began to manufacture and sell in commerce finger rings set with 32 facet, metal capped, white imitation stones bearing tags with the words "IMPORTED BARODA". Finally, in January 1957 the attorney for Griffith wrote a letter to the defendant complaining of its use of the word "BARODA" in connection with said rings and threatening legal proceedings unless it ceased to use the same. Defendant insisted on its right to do so, continued to sell its rings so marked and heard no more from Griffith or its attorney. And beginning in 1957, at least two other local manufacturers of finger rings began to manufacture and sell finger rings similarly marked, without objection thereto by Griffith.

On September 29, 1958 Griffith was merged with Irons and Russell Company (hereinafter called Irons and Russell), another Rhode Island corporation. Under the terms of this merger all of the assets of Griffith were transferred to Irons and Russell which assumed the former's liabilities. At the time of this merger no mention was made by the parties thereto of said trademark "BARODA". In fact, the executive officer of Irons and Russell, who acted for it in the transaction, testified that at the time of said merger he was unaware that Griffith had been making and selling finger rings, that he did not learn of the existence of said trademark until after said merger, and that Irons and Russell at the time of said merger, and thereafter, had no intention of engaging in the business of making and selling rings marked "BARODA". And it is undisputed that it did not do so after the merger.

He also testified that upon discovery by Irons and Russell that it had acquired, as a result of said merger, a quantity of tools and dies for the manufacture of finger rings and an inventory of 32 facet, metal capped, white imitation stones, he took action to dispose of them at what he termed "scrap value". Pursuant to this decision, on November 6, 1958, Irons and Russell sold to Esposito Jewelry, Inc. all the ring tools and dies formerly owned and used by Griffith and in connection ·therewith delivered to the buyer sample boards of rings formerly used by Griffith bearing between 2,000 and 2,500 different styles of mountings, some of which were set with stones bearing the tag marked "The BARODA Gem". Subsequently, in January 1959, Irons and Russell gave Esposito Jewelry, Inc. a list of former ring customers of Griffith which it had found after said transfer.

It further appears that Esposito Jewelry, Inc. had expressed lack of interest in acquiring said trademark when it purchased said tangible assets from Irons and Russell. Approximately one month after said transfer of assets, on December 5, 1958, Griffith executed a "confirmatory" assignment to Irons and Russell purporting to sell, assign and transfer to the latter nunc pro tunc as of, to-wit, September 29, 1958, its entire right, title and interest in said trademark No. 538,643 "together with the goodwill of the business connected with the use of and symbolized by said mark", etc. On the same date Irons and Russell executed another assignment of said trademark to the plaintiff purporting thereby to sell, assign and transfer unto the plaintiff "the entire right, title and interest in and to said trademark and registration

thereof * * * together with the goodwill of the business in connection with which the said trademark was used * * * " Both of these assignments were recorded in the U. S. Patent office on December 12, 1958. Notwithstanding the recital in the assignment to the plaintiff, the testimony established beyond doubt that none of the assets of the former ring business of Griffith were transferred to the plaintiff with this assignment. In fact, all of these assets had already been sold to Esposito Jewelry, Inc. At the time of the execution of said assignment, Irons and Russell was not engaged in the business of making and selling rings bearing the tag, "The BARODA Gem". It had never been engaged in that business.

Thereafter, on December 18, 1958, the plaintiff by its attorney, by notice in writing and referring to the earlier "cease and desist" letter sent to the defendant in January 1957, requested it to stop using ring tags bearing the words, "IMPORTED BARODA". In the early part of March 1959, the plaintiff caused notices to be published in certain jewelry trade journals to the effect that it was the sole owner of the "brand name BARODA", warning others not to use the same and threatening suit against infringers thereof. The defendant continued to market finger rings marked "IMPORTED BARODA" with the result that the instant action was instituted on March 19, 1959.

As hereinbefore pointed out, the defendant asserts several defenses to this action, each of which it claims precludes the plaintiff from obtaining the relief it seeks herein. In my opinion there is no occasion for me to consider and discuss all of these asserted defenses. To do so would unnecessarily prolong this opinion.

Plaintiff's right to the exclusive use of the trademark "BARODA" can be no greater than that of its predecessors in interest.

Section 14(c) of the Lanham Act, 15 U. S.C.A. § 1064(c) provides for the cancellation of a mark which has been aban-

doned. Section 33(b) of said Act, 15 U.S.C.A. § 1115(b), provides that abandonment shall be a defense to the "incontestability" provisions of Section 15 thereof.

Section 45 of said Act, 15 U.S.C.A. § 1127, provides in pertinent part as follows:

"A mark shall be deemed to be 'abandoned'—

"(a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie abandonment.

"(b) When any course of conduct of the registrant, including acts of omission as well as commission, causes the mark to lose its significance as an indication of origin."

■■ The evidence is convincing that the last sales of "BARODA" marked rings by Griffith were sales of samples in April 1956. There is no credible evidence of any such sales by it at any time thereafter. More than two years then elapsed until the merger of Griffith with Irons and Russell in September 1958. Under the above quoted provision of Section 45 of the Trade Mark Act, this non-use constituted prima facie abandonment of said mark by Griffith. The fact that its sales representatives may have carried antiquated rings set with said imitation stones marked "The BARODA Gem" in their sample cases after April 1956 does not establish that such mark was being used in commerce in such a way as to negate abandonment. That Griffith intended to abandon said trademark is further buttressed by its failure to take appropriate action to prevent the defendant, after January 7, 1957, from continuing to mark its rings with the mark, "IMPORTED BARODA". Such conduct by Griffith is clearly an indication of an intent by Griffith to abandon said mark. There was no evidence offered to explain its failure to introduce new styling in an attempt to create sales or to take appropriate action against the defendant which

in the meantime had created a substantial business for its finger rings.

While it may be that the responsible officers of Griffith entertained a subjective intention not to abandon said mark, the existence of such intention is not sufficient to avoid abandonment where an objective analysis of the situation warrants the inference of abandonment. This rule is set forth clearly in American Photographic Pub. Co. v. Ziff-Davis Pub. Co., 1943, 7 Cir., 135 F.2d 569, where the court said at page 573:

> "* * * But the purely subjective intention in the abandoner's mind to re-engage in a former enterprise at some indefinite future time is not sufficient to avoid abandonment where an objective analysis of the situation furnishes ample evidence to warrant the inference of abandonment. Golenpaul & Rosett, 174 Misc. 114, 18 N.Y.S.2d 889; American Photographic Pub. Co. v. Ziff-Davis Pub. Co., Cust. & Pat. App. 127 F.2d 308 [29 CCPA 1014], * * *."

In my opinion Griffith had abandoned said mark prior to its merger with Irons and Russell and its ownership thereof had ceased to exist at that date. In any event, if it be assumed that Griffith had not abandoned said mark, and its rights thereto passed upon the merger to Irons and Russell, it is unequivocally clear that the latter abandoned it. The testimony shows beyond doubt that Irons and Russell did not learn of its existence until after said merger and further, that it had no intention of ever using it. It had no intention of engaging in the ring business and proceeded to dispose of all the ring-making tools, dies and inventory of rings obtained from Griffith as soon as possible after the merger. Its conduct and freely admitted intention not to engage in the ring business supplies conclusive proof of its intention in November 1958 to abandon said mark. This being the situation, it had no right, title or interest in said mark which it could legally transfer to the plaintiff on December 5, 1958, as it purported to do.

■ Finding as I do that said mark had been abandoned by Griffith and as well by Irons and Russell, if not by Griffith, it follows that Irons and Russell possessed no interest therein which it could legally assign to the plaintiff.

Assuming arguendo that there had been no abandonment by either Griffith or Irons and Russell, I am also of the opinion that the plaintiff acquired no right, title or interest in said trademark by virtue of said assignment to it dated December 5, 1958.

The Lanham Act, 15 U.S.C.A. § 1060, provides that a trademark shall be legally assignable only "with the goodwill of the business in which the mark is used, or with that part of the goodwill of the business connected with the use of and symbolized by the mark * * *". Goodwill being inseparable from the business with which it is associated, this requirement of the transfer of goodwill restates the common law rule that a trademark can only be transferred with the business or part of the business connected with the use of and symbolized by such mark.

■ The assignment of December 5, 1958 to the plaintiff purported to include "the goodwill of the business" in connection with which said trademark was used. As hereinbefore recited, the testimony established beyond doubt that no part of the ring business, formerly owned by Griffith, was transferred with said assignment. In fact, there was no ring business to be transferred. At the time of said assignment Irons and Russell was not engaged in the ring business and had already sold all the ring tools, dies and inventory of said business and divested itself of the sample board used by Griffith when it was engaged in that business.

The assignment of the trademark was, despite said recital, obviously an assignment in gross and was legally void. Hence, it conferred no rights upon the plaintiff. United Drug Company v. Theodore Rectanus Company, 1918, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; American Broadcasting Co. v. Wahl Co., 1941, 2

Cir., 121 F.2d 412; Holly Hill Citrus Growers' Ass'n v. Holly Hill Fruit Products, Inc., 1935, 5 Cir., 75 F.2d 13; National Mineral Co. v. Bourjois, Inc., 1932, 7 Cir., 62 F.2d 1; Sexton Mfg. Co. v. Chesterfield Shirt Co., 1928, 58 App.D.C. 23, 24 F.2d 288; President Suspender Co. v. Mac William, 1916, 2 Cir., 238 F. 159, cert. den'd 1916, 243 U.S. 636, 37 S.Ct. 399, 61 L.Ed. 941; Macmahan Pharmacal Co. v. Denver Chemical Mfg. Co., 1901, 8 Cir., 113 F. 468; Nettie Rosenstein, Inc. v. Princess Pat. Ltd., 1955, 220 F.2d 444, 42 C.C.P.A. 806; La Fayette Brewery, Inc. v. Rock Island Brewing Co., 1937, C.C.P.A., 87 F.2d 489; E. Leitz, Inc. v. Watson, 1957, D.C.D.C., 152 F.Supp. 631, aff'd 103 U.S.App.D.C. 74, 254 F.2d 777; Stern Apparel Corporation v. Raingard, Inc., 1949, D.C. N.Y., 87 F.Supp. 621; Reconstruction Finance Corp. v. J. G. Menihan Corp., 1939, D.C.N.Y., 28 F.Supp. 920; Restatement of Torts, sec. 755.

Finding as I do that said trademark No. 538,643 had been abandoned before its purported assignment to the plaintiff and, further, that in any event said assignment conferred no rights upon the plaintiff, it follows that the plaintiff is not entitled to the relief it seeks. Judgment will be entered in favor of the defendant dismissing the plaintiff's complaint with prejudice.

In view of my conclusion that said trademark has been abandoned and that said assignment was a nullity, judgment will be entered in favor of the defendant on its counterclaim directing the Commissioner of Patents (in accordance with the provisions of 15 U.S.C.A. § 1119) to cancel the registration of said assignment from Irons and Russell Company, to the plaintiff, dated December 5, 1958 and recorded December 12, 1958.

Since the defendant has not established by the required degree of proof the amount of any damages it may have sustained by reason of plaintiff's conduct or the likelihood that plaintiff will henceforth endeavor to prevent defendant from using its mark to describe its product, defendant's prayers for damages and injunctive relief against the plaintiff are denied.

Counsel for the parties will prepare and present for entry an appropriate judgment embodying the conclusions hereinbefore expressed.