**MISTER DONUT OF AMERICA, INC.,**
**Plaintiff-Appellant,**

v.

**MR. DONUT, INC., et al., Defendants-Appellees.**

**MR. DONUT, INC., et al., Plaintiff-Appellants,**

v.

**MISTER DONUT OF AMERICA, INC.,**
**Defendant-Appellee.**

**Nos. 22116 and 22116-A.**

United States Court of Appeals
Ninth Circuit.

Dec. 4, 1969.

---

**840**

David Wolf (argued), of Wolf, Greenfield & Hieken, Boston, Mass., Leonard H. Monroe, Los Angeles, Cal., for plaintiff-appellant Mister Donut of America, Inc.

Francis A. Utecht (argued), of Fulwider, Patton, Rieber, Lee & Utecht, Long Beach, Cal., for defendant-appellee Mr. Donut, Inc.

Before HAMLEY and BROWNING, Circuit Judges, and McNICHOLS,* District Judge.

McNICHOLS, District Judge.

Appellant brought suit in the District Court alleging trademark infringement. Appellee answered and counterclaimed alleging fraud in the procurement of the trademark registration, and seeking both injunctive relief and attorney's fees. The trial court found against each party on the merits and dismissed both the complaint and counterclaim with prejudice. This appeal and cross-appeal were thereupon perfected.

Jurisdiction below was founded on 15 U.S.C., Sec. 1121; 28 U.S.C., Sec. 1338 (a) and (b); and 28 U.S.C., Sec. 1332. We have jurisdiction under 15 U.S.C., Sec. 1121 and 28 U.S.C., Sec. 1291.

Plaintiff-appellant, Mister Donut of America, Inc. (hereinafter for clarity, "plaintiff"), is a Massachusetts corporation with its principal place of business in that state and is primarily engaged in the promotion and franchising of retail doughnut shops under the name and style of Mr. Donut and Mister Donut. It began this business in Massachusetts in 1955 and now has more than 200 shops in numerous states ranging from coast to coast. Plaintiff's first California shop opened in 1966; there were at the time of trial five such shops operating in California.

Defendant-appellee, Mr. Donut, Inc. (hereinafter for clarity, "defendant"), is a California based corporation in the business of promoting and franchising retail doughnut shops using the name Mr. Donut and operating essentially a similar type of business as that of the plaintiff. Defendant opened its first shop in Orange County, California in December of 1957 and at the time of trial had seven franchised businesses located in various communities in Orange County.

The following chronology and factual situation is established by the record:

Plaintiff began to use the mark, Mister Donut in August, 1955; made sales in interstate commerce and applied to the United States Patent Office for registration of the mark pursuant to the provisions of the Trademark Act of 1946, codified as 15 U.S.C., Sec. 1051, et seq., and popularly known as the Lanham Act (hereinafter the "Act" or the "Lanham Act"). This initial application for registration was rejected by the Patent Office since research indicated that a like mark, Mr. Donut, had been previously registered to one Ragsdale of Everett,

---

* Hon. Ray McNichols, United States District Judge, Boise, Idaho, sitting by designation.

Washington in 1947. Plaintiff discovered that Ragsdale was deceased, but succeeded in purchasing an assignment of the Ragsdale rights from the estate, which assignment was duly recorded in the Patent Office on July 23, 1956, in accordance with the provisions of the Act. 15 U.S.C., Sec. 1060.

In October, 1957 (more than a year subsequent to the recordation of the Ragsdale assignment), defendant, without any actual knowledge of any prior use of the mark by anyone, first adopted the mark and, as indicated above, opened its first retail doughnut shop in California in December of that year.

On October 21, 1958, plaintiff secured a certificate of registration of the Mister Donut mark. (The trial court, rejecting the recording of the Ragsdale assignment, held that this date was the date of constructive notice of plaintiff's claim to the mark). By this time plaintiff had shops operating in Massachusetts, New York, Florida, Michigan and Virginia.

March 1, 1959, defendant franchised a second shop in Orange County and thereafter five more, in adjacent portions of the county, the opening being spaced over the following several years.

It appears that neither party was aware of the activities of the other until about 1963. In 1965, plaintiff opened a Western district office in Palo Alto, California and on April 23, 1966 the first California doughnut shop came into existence at Campbell, California. During 1966, three more shops were opened in California, not however, in Orange County. Plaintiff now proposes to establish retail doughnut shops in the Los Angeles and Orange County area. Undisputed evidence was presented at the trial to the effect that bona fide prospective franchisees, interested in operating in Orange County and the Los Angeles area, have, after discovering the competitive use of the mark by defendant, abandoned plans to open shops in the area.

It is further undisputed that the parties each make prominent use of the mark in advertising their respective doughnut shops. It is likewise conceded that the respective marks Mr. Donut and Mister Donut are confusingly similar as used on a retailing basis.

On the defendant's counterclaim the court found, and we think properly, that defendant was not entitled to attorney fees under 15 U.S.C., Sec. 1120, which provides:

"Any person who shall procure registration in the Patent Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

Defendant contends that plaintiff's original purported sales in commerce were "contrived sales" and constituted fraudulent conduct. The proof indicated that boxes of doughnuts with labels MR. DONUT and MISTER DONUT were transported by an agent of plaintiff from Massachusetts to other states and sold in those states. The Lanham Act defines "use in commerce" at 15 U.S.C., Sec. 1127:

"For the purposes of this chapter a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto and the goods are sold or transported in commerce * * *"

Such a sale as we find here has been held in this Circuit to be a use or transportation in commerce under the Act. Drop Dead Co. v. S. C. Johnson & Son, Inc., 326 F.2d 87, 93 (9th Cir. 1963). The trial court properly concluded that there was no false or fraudulent conduct in the registration by plaintiff of its trademark here in question and that no attorney fees were allowable.

The remaining and principal issues raised in this appeal are therefore limited to the alleged infringement against a federally protected trademark. We turn our attention to that question.

■■ Plaintiff, of course, would like to have its trademark registration rights commence with the recording of the Ragsdale assignment on July 23, 1955, as this date is prior to any use of the offending mark by the defendant. The trial court held that the assignment by the Ragsdale estate to plaintiff was an assignment in gross and conveyed no rights. He based this determination on a finding of fact, supported by substantial evidence, that Ragsdale had disposed of his doughnut business in 1951 and had not used the mark thereafter. There was no pretense that the estate transferred any customer lists, merchandise, equipment, recipes, decals or other goods. Thusly he held that the assignor estate had no good will and therefore assigned none. The court concluded from this state of facts that the assignment was in gross and that the recording thereof was ineffective to grant any rights in the trademark and that as a matter of law the recording of the assignment was not constructive notice to the defendant. The District Court was correct in so holding. The law is well settled that there are no rights in a trademark alone and that no rights can be transferred apart from the business with which the mark has been associated. Such was the common law rule and is now made a part of the Lanham Act. 15 U.S.C., Sec. 1060 [1]; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141 (1918); Dresser Industries Inc. v. Heraeus Engelhard Vacuum, Inc., 395 F.2d 457, 464 (CA 3, 1967); American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619, 625 (CA 5, 1963); Uncas Manufacturing Co. v. Clark & Coombs Co., 200 F.Supp. 831, 835 (DC R.I., 1962), affirmed 309 F.2d 818; Avon Shoe Co. v. David Crystal, Inc., 171 F.Supp. 293, 301 (DC N.Y., 1959), affirmed 279 F.2d 607, cert. denied 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224; E. Leitz, Inc. v. Watson, 152 F.Supp. 631, 635 (DC 1957), affirmed 103 U.S.App.D.C. 74, 254 F.2d 777.

With the Ragsdale assignment being inoperative to provide plaintiff with a right in the MR. DONUT mark, the court went on to find, again on substantial evidence, that defendant first adopted the mark in an intrastate action in October, 1957, and began the use in a retail shop on December 3, 1957. It is clear that defendants' use has been continuous from that time on. On the other hand, plaintiff's first effective registration of the mark with the U. S. Patent Office was on October 12, 1958. The use of the conflictingly similar mark by defendants up to this date was found by the court to be without knowledge either actual or constructive of plaintiff's use. In this posture of the evidence the court held that, if the Lanham Act applied, the defendants had established the statutory defense provided in the Act against the charge of infringement of plaintiff's exclusive right to the mark. The Act provides (15 U.S.C., Sec. 1115(b) (5)) for a defense against infringement by a prior user in this language:

"(b) If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the affidavit filed under the provisions of said section 1065 subject to any conditions or limitations stated therein except when one of the following defenses or defects is established:

" * * *

"(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark under subsection (c) of section 1062 of this title: *Provid-*

---

1. "A registered mark * * * shall be assignable with the goodwill of the business in which the mark is used * * *."

*ed, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved; * * *."

█ It is important to note, in view of our determination of this appeal, that the quoted language of the Act contains a limitation of the application of the defense to the *area* in which the prior continuous use is proved. (Emphasis supplied)

█ We think it clearly established that so far as the area of use of the mark at defendants' first shop, established in December, 1957, in Orange County, is concerned, Sec. 1115(b) (5) is a complete defense to plaintiff's charge of infringement. To the extent that the trial court so held, he was correct.

We come now to the most troublesome aspect of this appeal. The district judge determined "that defendants' activities were and are outside the Lanham Act because they do not affect interstate commerce". He therefore concluded that defendants' intrastate use of plaintiff's federally registered mark was not an infringement for which relief should be granted under the Lanham Act. In arriving at this holding, the District Court relied exclusively on the authority of Fairway Foods v. Fairway Markets, 227 F.2d 193 (9th Cir. 1955).

In *Fairway Foods,* the question facing the court was whether a large midwest grocery chain could enjoin the use of its federally registered trademark by a grocer doing business out of one store in California. The chain had no outlets in that state and no plans to locate any there in the foreseeable future. The District Court refused to issue an injunction because there was no present competition between the parties, and no likelihood of any in the future. This court in affirming that decision agreed that the conduct of the intrastate grocer would not warrant an injunction under the common law action for unfair competition, unless by operation of the Lanham Act. The panel of this Circuit then went on to hold that the activities of a purely intrastate grocer could not be made subject to the provisions of the Act unless these activities had a substantial effect on interstate commerce.

No such substantial effect was demonstrated as the parties were dealing in totally remote markets without any foreseeable likelihood of competition. Therefore it was held in *Fairway Foods* that the court should not enjoin the California grocer's activities.

We think *Fairway Foods* is good law, but is to be interpreted within the very narrow limits of its factual situation. This is borne out by the following excerpts from the opinion:

" * * * It will be important to note that plaintiff has not and never has had any outlet for its merchandise in California, nor within 1500 miles of defendant's one seat of business. (at p. 195)

" * * *

"The evidence without conflict supports the trial court's finding that there has been no confusion and that there is no likelihood of confusion because of the use by both parties of the word 'Fairway'. Neither party sells or tries to sell to any customer who buys from the other party. Neither party sells or tries to sell or offers to sell anything within the same territory that the other does business. There is absolutely no competition between the parties. Perhaps the most important element of unfair trade is that there be competition in the sale of like merchandise and that there is, or is likelihood of, confusion as to which competitive article is being purchased. * * (at p. 196)

" * * * We gain from the record that the judgment is based upon the court's view of the law that whether or not the marks are valid under the statute, they do not and cannot be effective as against defendant for the reason that the facts of the case do not show any competition or likelihood of competition or dilution of plaintiff's

good will, and do not touch interstate or foreign commerce.

"We find no reversible error in the court's conclusion that defendant has not infringed and is not infringing plaintiff's registered trade marks. And that there is no competition or likelihood of competition between the parties, for the reason that the facts do not bring the mark into issue." (at p. 198)

■ *Fairway Foods* thus stands for the rule that where the federal registrant and the intrastate user of conflictingly similar trade marks are using the respective marks in geographically separate and distinct market areas, with no real competition between them, and where there is no present likelihood that the federal registrant will expand his use into the area of use of the intrastate user, there is no cause shown for injunctive relief based on infringement. The instant case is readily distinguishable from *Fairway Foods* as the facts are nowise similar. Plaintiff has firmly established its nationwide doughnut shop business in California and is now competing with the defendant for shop locations in the same market area, i. e., Orange County. Each party has plans to expand throughout southern California and thus increase the competitive situation.

■ The trial court erred in determining that *Fairway Foods* was controlling in this case.

■ We hold that where a federal registrant has expanded its business to the point that the use of the conflictingly similar marks by the registrant and the unauthorized user are no longer confined to separate and distinct market areas and there is established the likelihood of public confusion, the federal registrant is entitled under the authority of the Lanham Act to injunctive relief. Dawn Donut Company v. Hart's Food Stores, Inc., 267 F.2d 358, 365 (CA 2 1959); and Cf. John R. Thompson Co. v. Holloway, 366 F.2d 108 (CA 5 1966); American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619 (CA 5 1963); Drop Dead Co. v. S. C. Johnson & Son, Inc., 326 F.2d 87 (CA 9 1963).

It is necessary that we remand the case to the District Court to determine the area of use by the defendant which was developed prior to October, 1958 when plaintiff's initial certificate of registration became effective. As to this area, defendant has perfected the defense provided in the Act by Sec. 1115 (b) (5). Thereafter the District Court will grant such injunctive relief as is required consonant with the rules laid down in this opinion.

One additional issue merits brief discussion. Plaintiff seeks to obviate the effect of the defense provided in Sec. 1115(b) (5) of the Act by attempting to interject California state law. This issue was not presented to the trial court and we would be justified in refusing to consider it now. Keegan v. United States, 385 F.2d 260 (9 Cir. 1967). However, since the matter is to go back to the District Court, we choose to comment.

Plaintiff claims that, since it first adopted the mark outside of California, it is the original owner and entitled under California law to exclusive right to the use of the mark regardless whether or not defendant was aware of the prior use. Reliance for this assertion is based on the California Business and Professions Code, Div. 6, Sec. 14270, which provided at the time of trial as follows:

"Original owner. Any person who has first adopted and used a trademark, whether within or beyond the limits of this State, is its original owner."

■ What the effect of this California statutory provision might be if the Lanham Act had not been passed by Congress, we need not decide. The Lanham Act has pre-empted the field of trademark law and controls. It follows that the defense provided in Sec. 1115 (b) (5) of the Act cannot be voided by state statute. Burger King of Florida,

Inc. v. Hoots, 403 F.2d 904 (CA 7, 1968).

The judgment appealed from is affirmed in part and reversed in part. The cause is remanded to the District Court for further proceedings in accordance with our holdings.