## WHITE TOWER SYSTEM, Inc., v. WHITE CASTLE SYSTEM OF EATING HOUSES CORPORATION.

### No. 7133.

Circuit Court of Appeals, Sixth Circuit.

May 4, 1937.

C. R. Fletcher, of Minneapolis, Minn., and I. A. Fish, of Milwaukee, Wis. (Junell, Driscoll, Fletcher, Dorsey & Barker, of Minneapolis, Minn., Stevenson, Butzel, Eaman & Long, of Detroit, Mich., and Fish, Marshutz & Hoffman, of Milwaukee, Wis., on the brief), for appellant.

E. W. Evans, of Wichita, Kan., and O. C. Hull, of Detroit, Mich. (Oxtoby, Robinson & Hull, of Detroit, Mich., and Vermilion, Evans, Carey & Lilleston, of Wichita, Kan., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This appeal deals with the question whether one who has substantially appropriated a trade name and advertising slogan and has knowingly imitated a building of peculiar style, with knowledge of their previous use in the same business by another, can enjoin the originator from using its own style of building, trade name and slogan in territory in which the junior user first operated, and whether the originator in turn can enjoin the junior user from such use.

Appellant filed its bill of complaint, seeking relief from alleged unfair competition. Appellee filed a cross-bill, seeking similar relief. The cause was referred to a special master, who filed a report recommending that a decree be entered in favor of appellee. The District Court confirmed the master's report, made findings of fact and conclusions of law, and permanently enjoined appellant as prayed in the cross-petition.

Both parties operate stands for the sale of hamburger sandwiches and other food products in Detroit, Michigan, each using a white structure designed like a miniature castle. As each party pleads that the names, types of buildings and advertising slogans are so similar as to mislead and deceive the public, confusion is conceded. Appellant entered Detroit in 1928 and appellee in 1929.

Appellee's predecessors began business in Wichita, Kansas, in 1921. The business expanded from Wichita through Omaha, Kansas City, St. Louis, Louisville, Cincinnati, Indianapolis, Minneapolis and St. Paul, later entering Detroit, Chicago, Columbus, Newark and New York. It now includes 120 stands in the major cities of eleven states. Since commencement of its business appellee has called its stands "White Castle," and its slogan has been "Buy 'Em By the Sack."

In 1926 appellant's predecessors and organizers began business in Milwaukee, Wisconsin, using a building similar in design to appellee's, under the name "White Tower," and the slogan "Take Home a Bagful." Appellant's organizers had been attracted to the possibilities of such a business by appellee's success in Minneapolis. They deliberately used one of appellee's stands as a model, obtained measurements and photographs thereof, and later secured plans and specifications of appellee's building and gave them to their architect. Appellant employed one of appellee's countermen at four times the salary received from appellee, to install the equipment. It was a part of the consideration for his employment that he should give information about the White Castle methods. He came into appellant's service equipped with a White Castle hamburger paddle, with specimens of the peculiar metal used in the White Castle griddle, and with appellee's accounting forms. Thus appellant secured access to, and in the main adopted, appellee's business methods.

The District Court found that appellee's food products, trade name, slogan, and style of building were known in Detroit and to the purchasing public of that city before appellant located there, and that Detroit was at that time within the normal scope of expansion of appellee's business, and that appellee then had substantial good will in that city. These findings were based upon testimony that appellee advertised in various newspapers, trade journals and over the radio, and also upon the testimony of residents of Detroit who had known of the White Castle lunchrooms prior to the opening of the White Tower stands.

Appellant vigorously urges that there was no evidence to support these findings. We cannot agree with this contention. Appellee's expansion into the cities east and north of Wichita, as found by the court, was made pursuant to a plan formed in 1921 by which it proposed to locate in cities where its name, slogan and style of architecture were already known, either because of their proximity or because there was flow of travel between them and cities in which it was already located. This plan was pursued with such success that when in 1926 appellant opened its stand in Milwaukee, it did so because it had observed the popularity of appellee's business and desired to profit by its good will. We cannot ignore the fact that appellee established its stands along arterial highways, with the result that the traveling public carried its reputation to far

distant points, and by personal recommendation its good name became an asset in Detroit. Good will may be defined as the favorable consideration shown by the purchasing public to goods known to emanate from a particular source. While its existence may be shown by proof of actual successful operation, it may also be shown by proof of the reputation which arises from such operation. It may exist in territory where no business is done by the possessor of the good will. Cf. Buckspan v. Hudson's Bay Co., 22 F.(2d) 721 (C.C.A.5). The right of the owner of good will to be protected is not limited to the prevention of actual market competition. Wisconsin Electric Co. v. Dumore Co., 35 F.(2d) 555 (C.C.A.6). In that case this court held that the doctrine of protection against unfair competition "extends to all cases in which one party fraudulently seeks to sell his goods as those of another."

■ While the trade names of both parties were registered as trade marks, the pleadings were framed and the trial was conducted on the theory of unfair competition, and it was upon this ground that the relief was granted. Unfair competition is "a convenient name for the doctrine that no one should be allowed to sell his goods as those of another." Vogue Co. v. Thompson-Hudson Co., 300 F. 509, 512 (C.C.A.6). Appellant having deliberately imitated the peculiar characteristics of appellee's business, and adopted its system, seeks to exclude appellee from using its own style of building, name and slogan in Detroit upon the ground that appellant first did business in that city.

■ The general rule is that priority of adoption of a trade name or distinctive advertising feature gives exclusive right to their use. Delaware & H. Canal Co. v. Clark, 13 Wall. 311, 322, 20 L.Ed. 581; Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 415, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 100, 39 S.Ct. 48, 63 L.Ed. 141. Appellee has the exclusive right to the name "White Castle," to its style of building and its slogan within its normal territory. If Detroit lies within that territory, appellant is guilty of unfair competition, for it palms off its food products as those of appellee. Cf. Western Oil Refining Co. v. Jones, 27 F.(2d) 205 (C.C.A.6). Appellant claims that it is entitled to an injunction under the established exception to this rule, which is that where the junior user has innocently built up a business in a market remote from that of the originator, he may not be restrained though his monopoly is restricted to the territory of its use. Hanover Star Milling Co. v. Metcalf, supra; United Drug Co. v. Theodore Rectanus Co., supra. However, these decisions, which adopt the exception, are to be distinguished, for in both the junior user had no knowledge of the originator's trade mark and no intention to copy it. The court in United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, at page 101, 39 S.Ct. 48, 52, 63 L.Ed. 141, quotes with approval from the Hanover Milling Co. Case, as follows: "But where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote the one from the other, the question of prior appropriation is legally insignificant, unless at least it appear that the second adopter has selected the mark with some design inimical to the interests of the first user, such as to take the benefit of the reputation of his goods, to forestall the extension of his trade, or the like." We think such design was present in the instant case. In the Hanover Milling Co. Case there were two causes. In one the second user was protected in new territory where the trade mark was used in good faith, but in the other, where fraudulent intent was indicated, the junior user was enjoined. The second holding supports the denial of appellant's prayer for injunction.

Appellant relies on certain decisions which apparently reach a different conclusion because of their peculiar facts. Thus when the original adopter consents to the operation by the junior user, or limits its own territory, the injunction against the junior user is denied. American Trading Co. v. H. E. Heacock Co., 285 U.S. 247, 52 S.Ct. 387, 76 L.Ed. 740. In that case the junior user secured permission from the prior user to register its trade mark under the statute of the Philippine Islands and developed a local trade in the Islands. The court held that the junior user would not be enjoined in its own territory. Obviously since the prior user consented to the registration of its trade mark it consented to the development of the junior user's business in the Philippine market. The same rule was applied in Nisley Shoe Co. v. Nisley Co., 72 F.(2d) 118 (C.C.A.6), where the junior user was protected in territory not occupied by the prior user. The prior user had consented to and encour-

aged the use of the trade name and the owner of the prior user corporation was president of the junior user corporation. These facts created an estoppel against the prior user.

The federal decisions generally hold that a junior user with inimical design, seeking to encroach upon another's established good will, will not only be refused relief, but will itself be enjoined. Western Oil Refining Co. v. Jones, supra; R. H. Macy & Co., Inc. v. Colorado Clothing Mfg. Co., 68 F.(2d) 690 (C.C.A.10); Sweet Sixteen Co. v. Sweet "16" Shop, Inc., 15 F.(2d) 920 (C.C.A.8). We apply this rule to the instant case.

The decree is affirmed.