**LONGCHAMPS, INC., Plaintiff,**

**v.**

**Herman EIG, d/b/a Snug Harbor Inn Steak and Brew, Defendant.**

**No. 70–Civ. 2727.**

United States District Court, S. D. New York.

Aug. 7, 1970.

---

BREW. The projected STEAK & BREW restaurants were to have a limited standard format featuring the service of grilled steak together with all the beer, salad, bread and condiments a customer cared to consume and were to have an "Old English Pub" setting. Having developed this concept, plaintiff proceeded to operate its own STEAK & BREW restaurants and to franchise other such restaurants throughout the country. As of June 1970, there were a total of fifteen of these restaurants in operation, with at least five additional ones projected to be opened within a year.

In connection with this STEAK & BREW restaurant chain, Longchamps has extensively advertised and promoted its own restaurants and the availability of its franchises and has helped franchisees advertise their STEAK & BREW restaurants. These advertisements have been carried by a number of major newspapers and popular magazines as well as by local newspapers having circulation primarily in the area of a particular restaurant. The chain has been advertised by radio stations in New York, New Jersey and Connecticut. It is undisputed that the cost of the foregoing promotions by Longchamps has been in excess of $200,000 and that in turn gross income has reached an annual level of $10,000,-000.

One of Longchamps' franchisees has been located, apparently since April 7, 1970, in Monsey, New York. The instant action arises because sometime around the second or third week of April 1970 defendant Herman Eig admittedly installed an electrically illuminated sign outside of his restaurant on Route 9W, Haverstraw, New York, which reads as follows:

SNUG HARBOR
INN
STEAK & BREW

As a result, claiming the violations of its rights as indicated above, plaintiff has brought the instant action for injunctive and monetary relief. Presented to the undersigned herein, however, is

Amster & Rothstein, New York City, for plaintiff; George Gottlieb, New York City, of counsel.

Miller & Mertzel, Haverstraw, for defendant.

## MEMORANDUM

CROAKE, District Judge.

Plaintiff herein makes the following allegations in its complaint: Count I: violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which provides federal protection against false designations of origin and false descriptions; Count II: common law trademark infringement and unfair competition; Count III: violation of the New York General Business Law, § 360 et seq., McKinney's Consol.Laws, c. 20, which provides protection against infringement of trademarks and trade names.

It appears that beginning in 1968, Longchamps, Inc. (hereinafter "Longchamps") embarked upon a plan to engage in the restaurant field under the trade name and service mark STEAK &

plaintiff's motion, brought on by order to show cause, for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, against defendant's using in any way whatsoever the term "STEAK & BREW" during the pendency of this action. Argument of the motion was held before the undersigned and decision was reserved.

In support of its application for a preliminary injunction, plaintiff argues that defendant in making use of the name STEAK & BREW unfairly competes with and infringes the common law and statutory trademark rights of plaintiff in its STEAK & BREW mark. Plaintiff also maintains that defendant by its use of the name falsely designates his restaurant as being one of the STEAK & BREW chain and being of the same quality, service, and format as the restaurants thereof. Plaintiff claims that the activities of defendant in using the name are causing immediate and irreparable harm and injury to plaintiff for the following reasons: (1) because patrons of defendant will be dissatisfied with that restaurant and that said dissatisfaction will carry over to plaintiff's restaurants and those of its franchisees, causing them to lose reputation and business; (2) because it will adversely affect plaintiff's relations with and fulfilment of obligations to its present and prospective franchisees.

In opposition to plaintiff's application for a preliminary injunction, defendant argues that it has not copied plaintiff's overall operation, but rather has only duplicated the name, or part thereof, and that such duplication does not violate plaintiff's rights in any respect since the STEAK & BREW name is purely descriptive of products sold in defendant's restaurant and has no independent significance to consumers as the name of plaintiff's chain, and that accordingly the use of the name by defendant does not constitute unfair competition or otherwise infringe any of plaintiff's rights. Defendant argues that the STEAK & BREW name is at best only a weak mark and has not assumed secondary meaning.

After considering the arguments and exhibits presented by counsel and after our own independent research of the law, we have concluded that a preliminary injunction will issue as sought by plaintiff. It is our judgment that plaintiff has sustained its burden of establishing the reasonable probability of its success on the merits and the danger of resultant irreparable damage if the preliminary injunction is not granted. *See, e. g.,* W. E. Bassett Company v. Revlon, Inc., 354 F.2d 868 (2d Cir. 1966).

First of all, as to the trademark infringement causes of action, it would appear that plaintiff's mark is, as defendant argues, a descriptive and weak mark. However, it would also appear that the name STEAK & BREW has assumed a secondary meaning as a result of the rather extensive and undeniably successful advertising campaign carried on by plaintiff. *See, e. g., id.*; Fund of Funds, Limited and I. O. S., Ltd. (S.A.) v. First American Fund of Funds, Inc., 274 F. Supp. 517 (S.D.N.Y.1967). Our consideration of the record has brought us to the conclusion that there is little or no room for doubt that plaintiff's publicity campaign has made the name STEAK & BREW a household name at least in the geographical area under consideration, such that its invocation brings plaintiff's restaurant chain or individual restaurants or franchisees thereof to the mind of the consumer. In words quite relevant to the instant case, the Court in *Fund of Funds*, in granting plaintiff summary judgment, pointed out the following:

> Defendant specifically does not point to any other source of possible evidence which would lead this court to believe that the factual claims made by plaintiffs * * * regarding plaintiffs' activities, size, purchases * * *, and wide publicity with regard to their name, * * *, are not valid claims. *supra* at 523–524.

As to the claim relating to the alleged false designation of origin and false description, plaintiff has made the required showing of the probability of resultant

confusion to consumers from defendant's use of the name. *See, e. g.*, Cutler-Hammer, Inc. v. Universal Relay Corp., 285 F.Supp. 636 (S.D.N.Y.1968).*

Likewise, plaintiff, by its arguments as outlined above, has proved to our satisfaction the danger of resultant irreparable injury if the preliminary injunction is not granted.

Accordingly, plaintiff's motion for a preliminary injunction is granted. The amount of security, pursuant to Rule 65 (c) of the Federal Rules of Civil Procedure, shall be $1,000.

Submit Order.

---

* The protection of the consumer is the primal purpose of the law in the area of unfair competition and more specifically in that of trademarks. *See, e. g.*, Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 (2d Cir. 1962).