**STEAK & BREW, INC., Plaintiff,**

v.

**BEEF & BREW RESTAURANT, INC. and Wesley Ling, Defendants.**

No. RI–CIV–73–3.

United States District Court, S. D. Illinois, N. D.

Feb. 15, 1974.

---

William J. Voelker, Jr., Peoria, Ill., Kenneth A. Genoni and Morton Amster, New York City, for plaintiff.

John M. Nolan, Bettendorf, Iowa, for defendants.

## DECISION AND ORDERS

ROBERT D. MORGAN, Chief Judge.

By its complaint herein, plaintiff seeks to enjoin defendants' further use of the name "Beef & Brew" in their operation of a restaurant located in Rock Island, Illinois. Count I of the complaint is based upon the provisions of Section 43(a) of the Lanham Trademark Act. 15 U.S.C. 1125(a). Count II is grounded upon the Illinois Trademark Statute. Ill.Rev.Stat.1973, ch. 140, § 8 et seq. Count III is grounded upon the common law of trademark infringement and unfair competition.

Jurisdiction of Count I of the complaint is conferred by the provisions of Title 15, United States Code, § 1121. Dependent jurisdiction of Counts II and III attaches by virtue of the provisions of Title 28, United States Code, § 1338(b), the same being joined with a controversy arising under the trademark laws of the United States.

The cause was tried by the court without a jury. It is now before the court upon the evidence adduced and upon the briefs, proposed findings of fact and conclusions of law submitted by the respective parties.

The essence of plaintiff's complaint is its position that it possesses the exclusive right to use the word "Brew," in conjunction with the generic name of an entree item, in restaurant operations. The factual background of the litigation, within the framework of which the legal issues must be decided, is largely not disputed.

Plaintiff is a Delaware corporation, with its principal place of business in New York City, New York. Defendant, Beef & Brew Restaurant, Inc., is an Iowa corporation, with its principal place of business in Rock Island, Illinois. Defendant, Wesley Ling, is a resident of Rock Island. He and his wife are the sole owners, and the only officers and directors, of the defendant corporation.

In 1969, Longchamps, Inc., plaintiff's predecessor in interest, began the promotion, development and operation of a chain of restaurants under the name "Steak & Brew." Each of those restaurants embodied the concept of a limited-menu steakhouse, set in the atmosphere of an English public house. The forte of the Steak & Brew marketing concept was, and is, a moderately priced meal,

consisting of a steak, unlimited salad, and all of the beer that the customer wants.

At about the same time, another chain of restaurants was begun by plaintiff[1] under the name "Roast Beef & Brew." The format and atmosphere of operation were, in all respects, parallel to that of Steak & Brew, except that roast beef, not steak, was the featured menu item.[2]

Neither "Steak & Brew" nor "Roast Beef & Brew" has been registered by plaintiff under the federal trademark statutes. Registration of the mark "Steak & Brew" has been obtained by plaintiff in several states, including Illinois.

In July, 1970, a Steak & Brew restaurant began operation in Peoria, Illinois, under a franchise granted to Steak and Shake, Inc., a corporation then controlled by Longchamps. That operation continued until in the fall of 1971, at which time Longchamps disposed of its interest in Steak and Shake and the franchise was revoked.

In 1971, defendant Ling obtained the incorporation of the defendant, Beef & Brew Restaurant, Inc. That corporation commenced the operation of a restaurant in Rock Island, Illinois, under the name "Beef & Brew" in April 1971. The format of Beef & Brew is also quite clearly based on an English pub theme. The restaurant features a limited menu of steak and beef entrees and a salad bar. No alcoholic beverage is included in the price fixed for meals. Beer and other alcoholic beverages are supplied at the customer's request and at his added expense.

The geographic area in which the single Beef & Brew restaurant operates is commonly known as the Quad-Cities area. That area encompasses Rock Island County, Illinois, and its principal cities of Rock Island, Moline and East Moline, and Scott County, Iowa, with its principal cities of Davenport and Bettendorf. The city of Rock Island is approximately one hundred miles distant from the city of Peoria, Illinois.

Continuously since 1969, plaintiff has invested substantial sums of money in promotion and advertising to make its "Brew" chains of restaurants a financial success. With the exception that it did, in 1969, place one advertisement in a national magazine soliciting franchises, plaintiff's advertising has been limited to the areas in which its restaurants were located.

Beginning in about July 1970, the Peoria Steak & Brew restaurant was advertised rather extensively in the only Peoria daily newspaper and on one Peoria television station and one Peoria radio station. Ads were also placed in a Shrine Circus program and in a promotional publication made available to visitors in the city of Peoria.

In the critical pre-April 1971 period, plaintiff's "Steak & Brew" operation had attracted substantial media attention. Plaintiff tendered in evidence two restaurant trade periodicals, both published in 1969, which contained feature articles about Longchamps and its "Steak & Brew" concept. Defendant objected to each of such exhibits (Plaintiff's 11a and 11b) upon the ground that there was lacking any foundation proof

---

1. In 1972, Longchamps assigned and transferred to plaintiff, Steak & Brew, Inc., all legal interest in the Steak & Brew and Roast Beef & Brew restaurant chains. The term "plaintiff" is employed herein to designate Longchamps or Steak & Brew, Inc., without differentiation, as the chronology measured by the time frame of that assignment requires.

2. As of April, 1971, plaintiff's restaurant chain encompassed twenty-three restaurants,

all, with one exception, being located in the states of New York, New Jersey, Florida and Connecticut. As of the date of trial, there were sixty-two restaurants operating under the name "Steak & Brew" or "Roast Beef & Brew," all situated along the Eastern seaboard of the United States. With the exception of some seven restaurants operated under franchises granted by plaintiff, all are owned and operated by plaintiff.

that Mr. Ling had seen those feature articles. That objection to admission was taken for decision with the case. The objections are overruled and the exhibits are admitted. Each is relevant to proof of the publicity and notoriety attached to plaintiff's use of its trade names. Other exhibits in evidence on this issue are comprised of newspaper articles and columnists' comment upon the plaintiff's operations. Such news items were largely limited to East Coast newspapers.

■ The evidence as a whole compels the finding that in April, 1971, the defendants had no prior knowledge of plaintiff's operation. Mr. Ling testified that he had not theretofore known the names "Steak & Brew" or "Roast Beef & Brew." That testimony is not refuted by any credible evidence. Publicity of plaintiff's operations, which was, specifically, geared to Illinois, was limited to advertisements for the Peoria Steak & Brew Restaurant. The evidence reveals that the Peoria Journal Star is not circulated in the Quad-Cities area. That area is beyond the normal range of the Peoria television station employed in such advertising. There is no evidence related to the effective range of the Peoria radio station likewise employed. Though Mr. Ling acknowledged making several business trips to Peoria while the Steak & Brew was there operating, his testimony that he acquired no knowledge of the existence of that restaurant remains wholly unrefuted. He testified that his time in Peoria was spent in an office near the center business district. The Steak & Brew Restaurant was located on Knoxville Avenue, several miles distant from downtown Peoria.

Mr. Ling further testified that he did not subscribe to any restaurant-trade publications in 1969, and that he did not see the Longchamps feature articles prior to the filing of this suit. In 1969 he owned an interest in a Chinese restaurant in the same location now occupied by the Beef & Brew Restaurant. He testified that he did become a subscriber to certain trade periodicals after he began the Beef & Brew operation.

In short, there is no strong reason to suspect, much less evidence, that any resident of the Quad-Cities area had knowledge of plaintiff's existence prior to the institution of this suit.

That factual background places the legal issues in proper perspective. The salient facts are: plaintiff did, in 1969, adopt the word "Brew" in conjunction with restaurant services; defendants did, in April, 1971, adopt the name "Beef & Brew" in conjunction with like services; and that defendants then had no prior knowledge of either of plaintiff's trade names. As between these parties, there is no question that plaintiff was the first to adopt "Brew" as part of its trade name.

### The Quality of Plaintiff's Mark

■ Defendants contend at the outset that the word "Brew" in plaintiff's trade names is descriptive of its product and, thus, not subject to protection unless it is shown to have attained a secondary meaning identified with plaintiff's business in the market area involved. The one reported case which has come to this court's attention involving the mark "Steak & Brew" held it to be descriptive and weak, albeit to have assumed a secondary meaning in New York state. *Longchamps, Inc. v. Eig*, 315 F.Supp. 456, 458 (S.D.N.Y.1970).

To circumvent a "descriptive" classification, plaintiff's president testified that the word "Brew" was not intended by plaintiff simply to mean "beer"; that the name was adopted with the intent of conveying the larger sense of the ambience of a fine food and beverage concept, as exemplified by the sometimes-used question, "What's brewing"? However, his testimony in this regard is pretty thoroughly refuted by plaintiff's exhibit evidence.

News media articles introduced in evidence by plaintiff frequently attribute to that witness plaintiff's theory that offering the public a complete package of food and drink at moderate prices is the in, and coming, concept for successful restaurant merchandising. That

theory and concept is embodied in plaintiff's advertising. A typical ad stresses, "All the Draught Beer You Can Drink," and "All the Salad You Can Make," plus a steak for a quoted price.[3] Thus, one cannot read plaintiff's exhibit evidence without concluding that the "ambience" of which the witness spoke is embodied in, and flows from, the free pitchers of beer by it provided.

The determinative consideration on this point is the image which the word evokes in the minds of the public generally. "Brew" is generally defined as "The process or result of brewing," and "A beverage formed by brewing." Webster's New International Dictionary, Second Edition. The word must be given its commonly understood meaning. To the average man "brew" means beer. This court agrees with *Eig* that the mark must be characterized as primarily descriptive and therefore weak.

### The Section 43(a) Issue

■ Section 43(a) of the Lanham Act prohibits the palming off of services by one person under the guise that such are the services of another.[4] Unless that section is to be given a scope greater than that of the registration provisions of the Act, the federal question devolves upon the common law. A trademark or trade name extends to areas of trade, not to areas which a particular trade has not reached. The right which the law protects is the trade in conjunction with the use of a particular mark. Hanover Milling Co. v. Metcalf, 240 U.S.

403, 412–413, 36 S.Ct. 357, 60 L.Ed. 713 (1916). There the Court said:

" * * * The primary and proper function of a trade mark is to identify the origin or ownership of the article to which it is affixed. When a party has been in the habit of labeling his goods with a distinctive mark, so that purchasers recognize goods thus marked as being of his production, others are debarred from applying the same mark to goods of the same description. * * * The essence of the wrong consists in the sale of the goods of one manufacturer or vendor for those of another." 240 U.S. at 412–413, 36 S.Ct. at 360. (Emphasis supplied.)

Further, the Court said:

" * * * In the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the question. But where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote the one from the other, the question of prior appropriation is legally insignificant; unless, . . . it appears that the second adopter has selected the mark with some design inimical to the interests of the first user, such as to take the benefits of the reputation of his goods, to forestall the extension of his trade, or the like." 240 U.S.at 415, 36 S.Ct. at 361.

The principle was restated in United Drug Co. v. Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918).

---

3. A typical format of plaintiff's advertisements under the "Steak & Brew" name is:
 "The Greatest Dining and Drinking Public House Ever."
 "All the Draught Beer You Can Drink."
 "All the Salad You Can Make."
 "Plus a Boneless Sirloin Steak,"
 for a stated price. The quoted phrases are set in bold-faced capital letters for emphasis.
 Plaintiff's Roast Beef & Brew advertisements follow a similar format, with the same emphasis. Instead of beer, some such ads stress "All the Wine and Sangria You Can Drink."

4. That section provides, in pertinent part:
 "Any person who shall affix, apply, or annex, or use in connection with any * * * services, * * * a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, * * * shall be liable to a civil action by any person * * * who believes that he is or is likely to be damaged by the use of any such false description or representation." 15 U. S.C. 1125(a).

Plaintiff urges the contention that the principle enunciated in *Hanover* and *United Drug*, which protects the innocent second party in his own market area, does not apply to restaurants. That argument takes on some credence from imprecision of comment in some of the many reported cases. It especially stresses a statement in Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, 614, n. 6 (7 Cir. 1965), to the effect that courts have almost universally enjoined the use of the same or similar names in cases involving hotels and restaurants. That dictum appears overly broad.

*Tisch* involved a case of clear trademark infringement. The defendant had definite prior knowledge of the plaintiff's adoption of the name "americana" for a luxury hotel in Miami, Florida. The plaintiff had expended thousands of dollars publicizing its new hotel nationwide, including advertisements in all major newspapers in the market area of Chicago, Illinois. Within about two months after that substantial publicity, the defendant began operating a motel in Chicago under the name "americana." Not only did the defendant pirate the name, but it also adopted the plaintiff's fanciful name in all details, namely, "americana" all in lower case, with a white line extending through the first "a" and a five-pointed star as the dot over the "i." Moreover, the court characterized the defendant's advertising as geared to lead the public to associate its motel with the plaintiff's enterprise.

Thus, that case of flagrant infringement is of interest here only because its produced footnote 6, and because this plaintiff stresses that note as establishing the principle that restaurant enterprises are a genus apart from other business enterprises. Analysis of the cases there cited refutes that contention. Prior knowledge was a factor, and most such cases involved the adoption of the same name.[5] Many involved the copying of fanciful names, fanciful decor and/or fanciful symbols employed by the senior user.[6]

Plaintiff's argument is definitively refuted by the decision in Burger King of Florida, Inc. v. Hoots, 403 F.2d 904 (7 Cir. 1968). The plaintiff, in *Hoots*, began a chain of restaurants under the name "Burger King" in 1953. In 1957, at a time when plaintiff was operating some thirty-eight such restaurants in the southern states, defendant, without knowledge of plaintiff's prior use of the name, opened a Burger King restaurant in Mattoon, Illinois. In 1959 the defendant obtained Illinois registration of the mark "Burger King." Plaintiff first entered the Illinois market in 1961, and in the same year registered its "Burger King" mark under the Lanham Act. The suit involved the competing claims of plaintiff to exclusive use of the mark because of its prior appropriation and federal registration, and of defendant to exclusive use in Illinois by virtue of his Illinois registration.

The court held that the defendant had innocently adopted the name "Burger King" without knowledge of plaintiff's prior use thereof, and that he had the exclusive right to use the mark in the Mattoon market area which he had developed. It further held that the plaintiff had the exclusive right to use the

5. *E. g.*, Thompson v. Alpine Motor Lodge, Inc., 296 F.2d 497 (5 Cir. 1961); Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79 (3 Cir. 1958); Pike v. Ruby Foo's Den, Inc., 98 U.S.App.D.C. 126, 232 F.2d 683 (1956); Stork Restaurant, Inc. v. Sahati, 166 F.2d 348 (9 Cir. 1948); White Tower System v. White Castle System, 90 F.2d 67 (6 Cir. 1937).

6. *E. g.*, *Ambassador East, Inc. v. Orsatti, Inc.*, *supra* (use of the name "Pump Room,"

a pump and other symbolic decor copied from the famous Chicago watering hole); Stork Restaurant, Inc. v. Sahati, *supra* (use of the name "Stork Club" by a tavern and the copying of the New York Club's distinctive insignia of a stork in a top hat); White Tower System v. White Castle System, *supra* (the close copying of a distinctive building design and decor used in connection with hamburger sales).

mark in all other areas of Illinois, by virtue of its prior adoption of the mark and its federal registration thereof.

The descriptive word "Brew" is not subject to exclusive appropriation, American Aloe Corp. v. Aloe Creme Laboratories, Inc., 420 F.2d 1248, 1253 (7 Cir. 1970). It would be subject to protection only upon proof that it had attained a secondary meaning, identified with plaintiff, in the market area involved. See Longchamps, Inc. v. Eig, *supra*.

There is no factual basis for a finding that defendants' use of the Beef & Brew name is a violation of Section 43(a). They innocently adopted the name for use in a market area in which plaintiff was then unknown. They are entitled to the continued use thereof.

### Unfair Competition

What has been said above largely disposes of the unfair competition count. The fact is that there is no competition between the parties in the market area involved. Though it has been held that direct competition is not an essential element of unfair competition, the essence of the wrong is the representation of one's goods as those of another. Stork Restaurant, Inc. v. Sahati, *supra*, 166 F.2d at 353–355. The law is geared to both protect the goodwill attached to a name or mark and protect the public from fraud and deceit. *Ibid*, Clairol, Inc. v. Andrea Dumon, Inc., 14 Ill.App.3d 641, 303 N.E.2d 177, 183 (1973). That both elements are lacking here is inherent in the fact that plaintiff, at the critical period, was unknown in the Quad-Cities area, and the fact that defendants adopted their name without knowledge of plaintiff's use of either "Steak & Brew" or "Roast Beef & Brew."

Factually, this case parallels the facts in Safeway Stores, Inc. v. Safeway Quality Foods, Inc., 433 F.2d 99 (7 Cir. 1970), and Fairway Foods v. Fairway Markets, 227 F.2d 193 (9 Cir. 1955). *Safeway* involved both unfair competition and the right to registration of a trademark. Defendant had adopted the name "Safe-way" for food stores in Indianapolis without knowledge of the plaintiff's prior use of the name "Safeway" for like stores in other sections of the country. The court held that the defendant had the right to continue to use its name in its market area and the further right to have its trademark registered for use within its geographic market area.

Fairway involved a registered mark, used in the northern tier of midwestern states for a chain of food stores. The defendant, without actual knowledge of plaintiff's mark, opened a single "Fairway Market" in Los Angeles, California. The court held that there was no unfair competition because there was no depletion of plaintiff's goodwill and no real likelihood of serious confusion of the public.

Here there is no depletion of plaintiff's goodwill and no likelihood of confusion in the market area.

### THE ILLINOIS REGISTRATION

This case presents a situation of the effect of registration alone. In May, 1969, plaintiff obtained registration of the mark "Steak & Brew" in Illinois upon its statement that the mark was first used by it in Illinois in April, 1969.

A trademark cannot exist in gross. A mark takes its efficacy from its actual use in connection with the sale of goods or services. DeLong Co. v. Hump Hairpin Co., 297 Ill. 359, 364–365, 366–367, 130 N.E. 765 (1921). Under the Illinois Act, a mark is registrable only upon its adoption and use within the state for that purpose. Ill.Rev.Stat. 1973, ch. 140, §§ 8(e), 10. Registration, standing alone, does not create the right to protection of a mark. *Cf.*, Adams v. Kassnel, 16 Ill.App.2d 540, 148 N.E.2d 818 (1958).

The most recent expression of opinion on the effect of registration appears in Burger King of Florida v. Hoots, *supra*. The defendant had registered the mark

"Burger King" in Illinois in 1959, without knowledge of the plaintiff's prior use of that name in other areas of the nation. Upon that basis, he argued that he had the exclusive right to the use of that mark throughout the state. The court rejected that argument, stating that registration alone created no substantive rights in the mark, but only the exclusive right to use of the mark in those areas wherein the mark had actually been used by him.

Defendants assert that the mark was not used by plaintiff in Illinois until the Peoria restaurant was opened in July, 1970. They argue that the registration was therefore fraudulently obtained and invalid. Ill.Rev.Stat.1973, ch. 140, § 8 et seq. The defendants also contend that the mark has been abandoned by plaintiff because it has not been used within the state since the autumn of 1971.

 The court need not, and does not, decide those questions of state law. Assuming the registration to be valid, it is not a bar to defendants' continued use of their name. No statement of opinion related to the scope of rights which plaintiff may possess under its Illinois registration is herein intended. Its registration of the "Steak & Brew" mark simply does not bar the innocent adoption and use by the defendants of a somewhat similar name embracing the word "Brew" in the Quad-Cities area where plaintiff's mark has never been used.

## DEFENDANTS' DEMAND FOR ATTORNEYS' FEES

Defendants demand for a judgment for their reasonable attorneys' fees rests upon their contention that there was no legal basis for this suit, and that the same was filed for the illegal purpose of forcing defendants to abandon their legal rights in the name "Beef & Brew."

 Though one who is so inclined might tend to suspect from the record here that the plaintiff might be employing litigation as a tool to bolster an unregistered weak mark, there is ab-solutely no basis for a finding that the suit was instituted or prosecuted in bad faith, or as a means of exerting purely economic force. It must actively defend a mark or risk abandonment. General Motors Corp. v. Cadillac Marine & Boat Co., 226 F.Supp. 716 (W.D.Mich.1964), cited by defendants, in which an automobile manufacturer sought to enjoin use of the name "Cadillac" on wholly non-competitive merchandise, is simply not in point. The fact that plaintiff corporation here is somewhat larger than defendant corporation here does not mean that plaintiff must pay defendants' attorney fees when plaintiff loses its action. The prayer for attorneys' fees must therefore be denied.

The court's findings of fact and conclusions of law are embodied in the narrative of this memorandum.

Accordingly, it is ordered that judgment is entered for the defendants, dismissing the complaint and each count thereof and for their costs of suit. It is further ordered that judgment is entered denying defendants' prayer for attorneys' fees.