**BURGER KING OF FLORIDA, INC., and Burger King Restaurants, Inc., Plaintiffs-Appellees,**

v.

**Gene HOOTS and Betty Hoots, d/b/a Burger King, Defendants-Appellants.**

**No. 16706.**

United States Court of Appeals Seventh Circuit.

Nov. 25, 1968.

Harlan Heller, Laurence W. Grabb, Mattoon, Ill., for appellants.

Louis B. Tishler, Jr., Chicago, Ill., Clyde Meachum, Danville, Ill., Theodore R. Scott, James P. Ryther, Chicago, Ill., for appellees.

Before KILEY, CUMMINGS and KERNER, Circuit Judges.

KILEY, Circuit Judge.

Defendants' appeal presents a conflict between plaintiffs' right to use the trade mark "Burger King," which plaintiffs have registered under the Federal Trade Mark Act,[1] and defendants' right to use the same trade mark which defendants have registered under the Illinois Trade Mark Act.[2] The district court resolved the conflict in favor of plaintiffs in this case of first impression in this Circuit. We affirm the judgment restraining the defendants from using the name "Burger King" in any part of Illinois except in their Mattoon, Illinois, market, and restraining plaintiffs from using their trade mark in the market area of Mattoon, Illinois.[3]

Defendants do not challenge the district court's findings of fact and have not included testimony of witnesses at the trial in the record on appeal.

Plaintiff Burger King of Florida, Inc. opened the first "Burger King" restaurant in Jacksonville, Florida, in 1953. By 1955, fifteen of these restaurants were in operation in Florida, Georgia and Tennessee; in 1956 the number operating in Alabama, Kentucky and Virginia was twenty-nine; by 1957, in these states, thirty-eight restaurants were in operation.

In July, 1961, plaintiffs opened their first Illinois "Burger King" restaurant in Skokie, and at that time had notice of the defendants' prior registration of the same mark under the Illinois Trade Mark Act. Thereafter, on October 3, 1961, plaintiffs' certificate of federal registration of the mark was issued. Subsequently, plaintiffs opened a restaurant in Champaign, Illinois, and at the time of the trial in November, 1967, were operating more than fifty "Burger King" restaurants in the state of Illinois.

In 1957 the defendants, who had been operating an ice cream business in Mattoon, Illinois, opened a "Burger King" restaurant there. In July, 1959, they registered that name under Illinois law as their trade mark, without notice of plaintiffs' prior use of the same mark. On September 26, 1962, the defendants, with constructive knowledge of plaintiffs' federal trade mark, opened a second similar restaurant, in Charleston, Illinois.

Both parties have used the trade mark prominently, and in 1962 they exchanged charges of infringement in Illinois. After plaintiffs opened a restaurant in Champaign, Illinois, defendants sued in the state court to restrain plaintiffs' use of the mark in Illinois. Plaintiffs then brought the federal suit, now before us, and the defendants counter-claimed for an injunction, charging plaintiffs with infringement of their Illinois trade mark.

The district court concluded, from the unchallenged findings, that plaintiffs' federal registration is prima facie evidence of the validity of the registration and ownership of the mark; that plaintiffs have both a common-law and a federal right in the mark superior to defendants' in the area of natural expansion of plaintiffs' enterprise which "logically included" all of Illinois, except where defendants had actually adopted and used the mark, innocently, i. e., without notice and in good faith; and that the defendants had adopted and continuously used the mark in the Mattoon area innocently and were entitled to protection in that market.

■■ We hold that the district court properly decided that plaintiffs' federal registration of the trade mark "Burger King" gave them the exclusive right to use the mark in Illinois except in the Mattoon market area in Illinois where the defendants, without knowledge of plaintiffs' prior use, actually used the mark before plaintiffs' federal registra-

---

1. 15 U.S.C. § 1053 et seq., also known as the Lanham Act.

2. Ill.Rev.Stat., Ch. 140 § 8 et seq. (1967).

3. The district court defined the Mattoon market area as a circle having a radius of twenty miles and a center located at the defendants' place of business in Mattoon, Illinois.

tion. The defendants did not acquire the exclusive right they would have acquired by their Illinois registration had they actually used the mark throughout Illinois prior to the plaintiffs' federal registration.

We think our holding is clear from the terms of the Federal Trade Mark Act. Under 15 U.S.C. § 1065 of the Act, plaintiffs, owners of the federally registered trade mark "Burger King," have the "incontestable" right to use the mark in commerce, except to the extent that such use infringes what valid right the defendants have acquired by their continuous use of the same mark prior to plaintiffs' federal registration.

■ Under 15 U.S.C. § 1115(b), the federal certificate of registration is "conclusive evidence" of plaintiffs' "exclusive right" to use the mark. This Section, however, also provides a defense to an exclusive right to use a trade mark: If a trade mark was adopted without knowledge of the federal registrant's prior use, and has been continuously used, then such use "shall" constitute a defense to infringement, provided that this defense applies only for the area in which such continuous prior use is proved. Since the defendants have established that they had adopted the mark "Burger King" without knowledge of plaintiffs' prior use and that they had continuously used the mark from a date prior to plaintiffs' federal registration of the mark, they are entitled to protection in the area which that use appropriated to them.

Plaintiffs agree that the defendants as prior good faith users are to be protected in the area that they had appropriated. Thus, the question narrows to what area in Illinois the defendants have appropriated by virtue of their Illinois registration.

At common law, defendants were entitled to protection in the Mattoon market area because of the innocent use of the mark prior to plaintiffs' federal registration. They argue that the Illinois Trade Mark Act was designed to give more protection than they already had at common law, and that various provisions [4] of the Illinois Act indicate an intention to afford Illinois registrants exclusive rights to use trade marks throughout the state, regardless of whether they actually used the marks throughout the state or not. However, the Act itself does not express any such intention. And no case has been cited to us, nor has our research disclosed any case in the Illinois courts deciding whether a registrant is entitled to statewide protection even if he has used the mark only in a small geographical area.

Two decisions of this court, however, shed light on the defendants' argument. In Philco Corp. v. Phillips Mfg. Co., 133 F.2d 663, 148 A.L.R. 125 (7th Cir. 1943), this court, through Judge Kerner,[5] discussed the 1905 and 1920 Trade Mark Acts, and decided that Congress had the constitutional power to legislate on "merits of trade mark questions," supra at 670 of 133 F.2d. It then stated that the policy of the Acts, to provide protection of federally registered marks used in interstate commerce, "may not be defeated or obstructed by State law" and that if state law conflicts with the policy it "must yield to the superior federal law." The court held that Philco's federal-registration rendered all questions of use and protection in interstate commerce questions of federal law, not state law. And in John Morrell & Co. v. Reliable Packing Co., 295 F.2d 314 (7th Cir. 1961), Judge Duffy states, at 317, "However, the Illinois registration carries no presumption of validity"—thus attributing greater value to a federal registration because of its "incontestability" feature, which is prima facie evidence of exclusivity in interstate commerce. See also Hot Shoppes, Inc. v. Hot Shoppe, Inc., 203 F.Supp. 777, 781–782. (M.D.N.C.1962).

4. Ill.Rev.Stat., Ch. 140 §§ 9(f), 16(A) (4) (c) (1967). These sections prohibit dual registration of a trade mark in Illinois.

5. Father of Judge Otto Kerner of this court.

The competing federal and state statutes confirm the correctness of this court's statements. Under 15 U.S.C. § 1115(b) of the Lanham Act, the federal certificate can be "conclusive evidence" of registrant's "exclusive right." And 15 U.S.C. § 1127 of the Act provides that "The intent of this chapter is * * * to protect registered marks used in such commerce from interference by State * * * legislation." The Illinois Act, however, provides only that a certificate of registration "shall be admissible * * * evidence as competent and sufficient proof of the registration * *." Ill.Rev.Stat. Ch. 140, § 11 (1967).

■■■ Moreover, we think that whether or not Illinois intended to enlarge the common law with respect to a right of exclusivity in that state, the Illinois Act does not enlarge its right in the area where the federal mark has priority. See Hot Shoppes, supra, 782. Congress expanded the common law, however, by granting an exclusive right in commerce to federal registrants in areas where there has been no offsetting use of the mark. Congress intended the Lanham Act to afford nation-wide protection to federally-registered marks, and that once the certificate has issued, no person can acquire any additional rights superior to those obtained by the federal registrant. See John R. Thompson Co. v. Holloway, 366 F.2d 108 (5th Cir. 1966); Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358 (2d Cir. 1959).

Cases cited by the defendants in support of their claim to exclusive right in Illinois do not help them. ABC Stores v. T. S. Richey & Co., 280 S.W. 177, (Tex. Com.App.1926) is a pre-Lanham Act case involving a Texas trade mark dispute between Texas corporations involving intrastate commerce. Hotel Sherman, Inc. v. Harlow et al., 186 F.Supp. 618 (S.D.Cal.1960), concerning the mark "Pump Room" did not, apparently, involve a dispute between federal and state registrants. However, we note that the court there in a mode similar to the district court judgment before us allocated territory to each of the parties. And in Nielsen v. American Oil Co., 203 F.Supp. 473 (D.Utah 1962), the district court held that American Oil Co. by virtue of its prior use of its mark "within the State of Utah and Cache County" was entitled under Utah law to the exclusive intrastate use of the mark. However, the opinion also states that as early as 1932 defendant used its mark in sales at Bonneville Salt Flats, and starting in 1953 made annually a few interstate sales in Utah, and beginning in 1960 used the mark throughout Utah.

We conclude that if we were to accept the defendants' argument we would be fostering, in clear opposition to the express terms of the Lanham Act, an interference with plaintiffs' exclusive right in interstate commerce to use its federal mark.

The undisputed continuous market for the defendants' "Burger King" products was confined to a twenty mile radius of Mattoon. There is no evidence before us of any intention or hope for their use of their Illinois mark beyond that market. Yet they seek to exclude plaintiffs from expanding the scope of their national exclusive right, and from operating fifty enterprises already begun in Illinois. This result would clearly burden interstate commerce.

The defendants argue also that unless they are given the right to exclusive use throughout Illinois, many persons from all parts of Illinois in our current mobile society will come in contact with the defendants' business and will become confused as to whether they are getting the defendants' product, as they intended.

■■■ We are not persuaded by this argument. Defendants have not shown that the Illinois public is likely to confuse the products furnished by plaintiffs and by defendants. John R. Thompson Co. v. Holloway, 366 F.2d 108 (5th Cir. 1966), and cases cited therein. We are asked to infer that confusion will exist from the mere fact that both trade marks co-exist in the state of Illinois.

However, the district court found that the defendants' market area was limited to within twenty miles of their place of business. The court's decision restricted the use of the mark by plaintiffs and defendants to sufficiently distinct and geographically separate markets so that public confusion would be reduced to a minimum. The mere fact that some people will travel from one market area to the other does not, of itself, establish that confusion will result. Since the defendants have failed to establish on the record any likelihood of confusion or any actual confusion, they are not entitled to an inference that confusion will result.

For the reasons given, the judgment of the district court is affirmed.