**ALLIED TELEPHONE COMPANY, INC., Plaintiff,**

v.

**ALLIED TELEPHONE SYSTEMS COMPANY, INC., et al., Defendants.**

No. C–2–81–1497.

United States District Court,
S.D. Ohio, E.D.

Aug. 10, 1982.

Richard T. Taps, James Van Santen, Steven H. Noll, Chicago, Ill., for plaintiff.

Jack W. Decker, Carl Genberg, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

### I

This matter is before the Court following a hearing on defendants' motion for preliminary injunction. The complaint herein was filed on December 17, 1981, by plaintiff Allied Telephone Company against defendant Allied Telephone Systems Company. On March 24, 1982, plaintiff filed an amended complaint adding as individual defendants Jesse G. Dickinson, Jr. and Lula H. Dickinson, his mother. Plaintiff will be referred to herein as "Allied," and defendants as "the Dickinsons." In its amended complaint, Allied alleged causes of action against the Dickinsons for unfair competi-

tion, 11 U.S.C. § 1125(a), federal trademark infringement, 15 U.S.C. §§ 1114–1118, common law trademark infringement under Ohio law, and deceptive trade practices under Ohio statutory law, R.C. 4165.01 *et seq.* Plaintiff sought, *inter alia,* damages and permanent injunctive relief, but did not move for preliminary injunctive relief.

On April 5, 1982, the Dickinsons answered the amended complaint and asserted a counterclaim against plaintiff in which three claims for relief were pleaded. The Dickinsons alleged that plaintiff had secured its federal registration for the service mark "Allied System" by perpetrating a fraud upon the United States Patent and Trademark Office and requested cancellation of plaintiff's registration. In their second claim for relief, the Dickinsons alleged that Jesse G. Dickinson, Jr. has been and continues to be the owner of the Ohio state registration for the trademark "Allied Telephone Systems Company" which entitles defendants to the exclusive use of the mark in and throughout the entire State of Ohio. The Dickinsons' third claim for relief sought a declaration of the respective rights of the parties.

On June 14, 1982, the Dickinsons moved for a preliminary injunction against Allied.[1] They now seek an order from this Court enjoining Allied from using the mark "Allied Telephone" and any other similar mark in the State of Ohio during the pendency of this action. The Court has heard oral argument on defendants' motion for preliminary relief and has received documentary evidence pertinent to the motion. The Court's findings of fact and conclusions of law follow.[2]

### II

Plaintiff Allied Telephone Company began doing business under that name at the time of its incorporation in 1954. Allied

---

1. The parties have also filed cross-motions for summary judgment. The Court leaves for another day the resolution of these Rule 56 motions.

2. Rule 52 of the Federal Rules of Civil Procedure provides in pertinent part: "[I]n granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action."

began operations in Little Rock, Arkansas, and has now acquired operating telephone companies in the states of Kentucky, Tennessee, Missouri, Oklahoma and Texas. In addition, Allied furnishes telephone services and systems through a related company, Allied Telecommunication Systems, Inc., in Arkansas, Georgia, Texas, and Kentucky.[3]

Since September 20, 1965, Allied has been utilizing the service mark "a" and logo design set out below:

Allied is the owner and user of service mark Registration No. 989,796 in the Principal Register of the United States Patent and Trademark Office for "a" and this logo design. Allied's registration for the "a" and logo design was filed on October 12, 1970, and issued on July 30, 1974. Importantly, plaintiff does *not* claim trademark infringement or unfair competition with respect to this registration in this action.

Allied has been furnishing telephone services to the public under the service mark "Allied System" continuously since November 1969. Although Allied has been using this service mark for a number of years, Allied did not apply for federal registration of the mark until March 27, 1980. Registration No. 1,159,444 in the Principal Register of the United States Patent and Trademark Office for "Allied System" was issued to Allied on June 30, 1981. Thus, plaintiff Allied apparently used the service mark "Allied Systems" for some ten years

before applying for federal registration. Plaintiff's application for registration was filed *after* the development of the current dispute with the Dickinsons.

Jesse G. Dickinson, Jr. applied for and received the Ohio state registration for the service mark "Allied Telephone Systems Company" bearing Registration No. 52329 in March 1979. At that time, the Dickinsons' Allied Telephone Systems Company was still in an embryonic stage. No sales had apparently yet been consummated. The Dickinsons' first sale using the designation "Allied" occurred on or about July 27, 1979.[4] The Dickinsons' total sales using the Allied name totalled some $3,261.36 in 1979.[5]

According to the sworn affidavit of Jesse G. Dickinson, Jr., "he had not heard of nor had he knowledge of the existence of the Plaintiff Allied Telephone Company or of any other entity providing similar services under any similar name," at the time he commenced business under the Allied name in March 1979. There is no other evidence of record to refute that assertion.[6] Thus, the Dickinsons' initial use of the Allied name was in good faith.

At the time the Dickinsons began using the disputed name in 1979, plaintiff Allied had made no sales in the Ohio market. To date, Allied's only actual business activity in the State of Ohio is a series of letters beginning in March 1982 between a Kentucky Allied entity and Proctor and Gamble of Cincinnati, Ohio.[7] The letters concerned Allied's bid on the furnishing and installation of a phone system for Proctor and Gamble in Ohio. Although the preliminary negotiations did not result in a contract, Allied Telephone Company of Kentucky re-

3. ¶ 7 of affidavit of Joe T. Ford. Ford is the President and Chief Executive Officer of the plaintiff, Allied Telephone Company, which is headquartered in Little Rock, Arkansas.

4. Affidavit of Lula H. Dickinson.

5. Defendants' Response to Plaintiff's Interrogatory # 13.

6. There is also no evidence of record that any other person affiliated with the Dickinson enterprise had any knowledge of plaintiff at the time they began doing business under the Allied name.

7. Ford Affidavit, Exhibits 1–4.

mains interested in making future bids for Proctor and Gamble.[8]

At the time the Dickinsons began using the Allied name in Ohio, Allied Telephone Company of Kentucky was doing business under another name, Echo Telephone Company. The Echo name was changed to Allied on or about January 25, 1982, some time after the dispute with the Dickinsons had developed.[9] According to the evidence of record at this stage of the proceedings, the Dickinsons first learned of the existence of plaintiff Allied on November 2, 1979.[10] When plaintiff Allied discovered that the Dickinsons were doing business under the Allied name, its president, Joe T. Ford, instructed counsel to put defendants on notice of Allied's claim concerning trademark infringement. As a result, counsel for plaintiff sent a letter to defendants in Columbus, Ohio, requesting that defendants "cease and desist from further use or advertising of the name 'Allied Telephone Systems' in connection with the services and advertising of your company."[11] The Dickinsons responded that they were entitled to the use of their name, Allied Telephone Systems Company, by virtue of their Ohio trademark. After further discussions between the parties failed to resolve the dispute, plaintiff Allied filed this action.

The Dickinsons' sales under the Allied name have grown since 1979. In 1980, there were sales of $31,987.66; in 1981 sales were $29,691.04; and in the first three months of 1982, sales were $7,866.67.[12] The Dickinsons have now made sales in the following Ohio counties: Athens, Delaware, Franklin, Greene, Guernsey, Hamilton, Licking, Logan, Marion, Miami, Montgomery, Pickaway, and Scioto.[13]

Both parties to this dispute anticipate further expansion under the Allied name throughout Ohio. The parties agree that the similarity in company names and services would result in substantial confusion in the marketplace.

### III

On a motion for preliminary injunction, the defendant as movant has the burden of satisfying four traditional equitable tests: substantial likelihood of success on the merits,[14] irreparable injury, the balance of harms, and the public interest. *Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977); *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 514 F.Supp. 704 (S.D. Ohio 1981).

The Court turns first to the question of defendants' likelihood of success on the merits. In order to properly evaluate the defendants' likelihood of success, the Court must initially consider the legal rights inuring to the plaintiff by virtue of its federal registration of the disputed mark. As noted above, plaintiff Allied is the owner of Registration No. 1,159,444 on the name "Allied System." The registration issued on June 30, 1981. Pursuant to 15 U.S.C. § 1115(b), Allied as the registrant of the mark, has "the exclusive right to use the registered mark ...."[15] throughout

---

**8.** *Id.* Exhibit 4.

**9.** Plaintiff's Response to Defendant's Interrogatory # 3.

**10.** Ford Affidavit, Exhibit B; Defendants' Responses to Plaintiff's Interrogatory # 10.

**11.** Ford Affidavit, Exhibit B.

**12.** Defendants' Response to Plaintiff's Interrogatory # 13.

**13.** Lula H. Dickinson Affidavit.

**14.** The first test for preliminary relief may also be satisfied by a showing of "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76 (2d Cir.1981); *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642, 651 (6th Cir.1982).

**15.** Section 1115 provides in pertinent part:

(b) If the right to use the registered mark has become uncontestable under Section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified ... except when one of the following defenses or defects is established:

(1) That the registration or the incontestable right to use the mark was obtained fraudulently; or

the United States unless a defense or defect is applicable. Allied's federal registration of the Allied name provides constructive notice of its claim of ownership throughout the country, even in areas where Allied is not currently trading. 15 U.S.C. § 1072; *Dawn Donut Company v. Hart's Food Stores, Inc.*, 267 F.2d 358, 362 (2d Cir.1959). The Dickinsons do not dispute that if they had adopted the Allied name *after* the date of Allied's registration, Allied would be entitled to an injunction restraining such use.[16]

■ On the facts here presented, however, the Dickinsons invoke the defense of 15 U.S.C. § 1115(b)(5) which provides in pertinent part:

(b) If the right to use the registered mark has become uncontestable under Section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified ... except when one of the following defenses or defects is established:

(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark under subsection (c) of Section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved;

Under section (b)(5) a party who has adopted a mark without knowledge of the registrant's prior use and has continuously used the mark from a date prior to the date of registration, is permitted to continue use of the mark, but only in the area of such prior use. Put simply, the innocent junior user is locked into the trading area he had utilized prior to the date of registration.

■ The facts pertinent to the application of section (b)(5) are worthy of emphasis. The Dickinsons adopted the Allied name without knowledge of Allied's prior use in March 1979. They have continuously used the mark from March 1979, which was prior to the date of Allied's registration on June 30, 1981, until the present. The Dickinsons thus appear to satisfy the requirements of the section (b)(5) defense. *Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.,* 477 F.2d 150 (6th Cir.1973). In that case, plaintiff had obtained federal registration of the "Old Dutch" mark in 1957. Prior to that date, defendant had innocently used the "Old Dutch" mark in a six-state area. Both the District Court, 345 F.Supp. 1399, and the Court of Appeals concluded that the defendant's innocent prior use entitled the defendant to continued use notwithstanding the federal registration of the "Old Dutch" mark by the plaintiff. 15 U.S.C. § 1115(b)(5).

Plaintiff Allied contends that the decision in *Old Dutch* is distinguishable because in the case at bar there was no innocent prior use as in *Old Dutch*. Allied apparently concedes on the current state of the record that the Dickinsons applied for Ohio trademark protection in subjective good faith. Allied nevertheless contends that by virtue of Allied's large size and aggressive posture in the telephone industry, the Dickinsons reasonably should have known of Allied at the time they first used the Allied name. On this record, however, there are simply no facts warranting such an inference. Nor has Allied cited any legal authority imposing such a duty as a matter of law.

(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark

under subsection (c) of Section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved;

16. Defendants' Memorandum in Support of Motion for Preliminary Injunction, p. 3.

■ Allied also argues that the Dickinsons were put on notice of Allied's claim of infringement on November 2, 1979 and that use of the disputed mark after that date cannot be considered for purposes of satisfying the section (b)(5) requirements. At the time the Dickinsons received Allied's so-called cease and desist letter, the Dickinsons had sold products under the Allied name for only three or four months. This argument requires careful consideration of the statutory language. The statute requires only that there has been *adoption* "without knowledge of the registrant's prior use." The statute does not require *continuous use* without knowledge. The "without knowledge" clause of Section (b)(5) does not, in the Court's view, modify the "continuous use" clause which follows immediately thereafter. Thus, where the Dickinsons adopted the Allied name without knowledge, but later acquired knowledge of Allied's claim of ownership during the period of continuous use, the Section (b)(5) defense is still applicable. *See also Roman Products Corp. v. DiCrasto Dairy & Food Products, Inc.,* 361 F.2d 599 (2d Cir.1966).

■ Having concluded that the Dickinsons have made an adequate showing of likelihood of success on the merits of their section (b)(5) defense, the Court must next consider the proviso to that section. As noted above, the proviso states:

Provided, however, that this defense or defect shall apply *only for the area in which such continuous prior use is proved.* (Emphasis added.)

The issue presented is whether the term "area" in the proviso should be construed to include the entire State of Ohio, or, instead, the much smaller area in which the Dickinsons have engaged in actual continuous use of the disputed mark. Relying on Ohio common law trademark principles, the Dickinsons contend that they have established a section (b)(5) defense throughout the State of Ohio. In the recent Sixth Circuit decision in *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642 (6th Cir.1982), the Court wrote:

The Ohio Supreme Court has recognized that a trademark is entitled to protection throughout the entire state even though its owner is currently operating only in one part of the state. *Younker v. Nationwide Mutual Ins. Co.,* 175 Ohio St. 1, 191 N.E.2d 145 (1963). More to the point, this court in *Socony-Vacuum Oil Co. v. Oil City Refiners, Inc.,* 136 F.2d 470 (6th Cir.), *cert. denied,* 320 U.S. 798, 64 S.Ct. 369, 88 L.Ed. 482 (1943), determined that the user of a trademark "was entitled to the exclusive use of the name within the entire state as territory which may reasonably be anticipated to be within normal business expansion . . . ." *Id.* at 475. *Accord, Grocers Baking Co. v. Sigler,* 132 F.2d 498, 502 (6th Cir.1942).

The Dickinsons contend that this rule of law is applicable to the section (b)(5) proviso.

None of the cases relied upon by the Dickinsons, however, involved the geographical scope of the section (b)(5) defense. In the *Frisch's* case, for example, the Court was concerned with the question of standing under section 43(a) of the Lanham Act and not with the question of a section 1115(b)(5) defense. While the Sixth Circuit's analysis in that context arguably lends support to the Dickinsons' argument, the Court does not believe that analysis is binding on the distinct issue here presented.

The Court believes instead that the language of the proviso itself supports the conclusion that the term "area" must be construed in a narrower sense than that suggested by the Dickinsons. Congress could easily have employed the term "state" in lieu of the statutory term "area," but it did not. Instead, Congress used the more flexible term area and focused the inquiry on whether there had actually been continuous use in such area prior to the date of registration.

Other courts faced with the application of the section (b)(5) defense have routinely afforded protection for areas less than an entire state. *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.,* 433 F.2d 99, 101, 104 (7th Cir.1970) (defendants are protected

by section (b)(5) defense and may continue to use "SAFEWAY" mark in Indianapolis Metropolitan area); *Mister Donut of America, Inc. v. Mr. Donut, Inc.,* 418 F.2d 838, 844 (9th Cir.1969) (defendant perfected section (b)(5) defense and case remanded to trial court for determination of area of use by defendant in and around Orange County, California); *Ace Hardware Co., Inc. v. Ace Hardware Corp.,* 532 F.Supp. 770, 773 (N.D. N.Y.1982) (one of the issues remaining for trial is "the area within the State of New York where plaintiff conducted business operations under the name 'Ace Hardware' prior to defendant's registration of its trademark"); *Jerrico, Inc. v. Jerry's, Inc.,* 376 F.Supp. 1079, 1084 (S.D.Fla.1974) (defendant's prior use of disputed mark in Dade County, Florida, entitles defendant to exclusive use of mark only in area of "actual prior use," not the entire state of Florida).

In *Burger King of Florida, Inc. v. Hoots,* 403 F.2d 904 (7th Cir.1968), the party invoking the section (b)(5) defense argued that as the owner of an Illinois trademark, it was entitled to statewide exclusivity for its mark. The Seventh Circuit found no express evidence of a principle of statewide exclusivity in the applicable Illinois statute or cases construing it. In dicta, however, the Court concluded that even if Illinois had intended statewide exclusivity, the federal Lanham Act was controlling:

> Moreover, we think that whether or not Illinois intended to enlarge the common law with respect to a right of exclusivity in that state, the Illinois Act does not enlarge its right in the area where the federal mark has priority. Congress expanded the common law, however, by granting an exclusive right in commerce to federal registrants in areas where there has been no off-setting use of the mark. Congress intended the Lanham Act to afford nationwide protection to federally-registered marks, and that once the certificate had issued, no person can acquire any additional rights superior to those obtained by the federal registrant. (Citations omitted.)

403 F.2d at 908. The Court therefore concluded that the party relying on the section (b)(5) defense was entitled to protection only in the limited area of its previously established market and not throughout the state.

The Dickinsons have cited no authority holding a section (b)(5) defense applicable to an entire state where, as here, the area of prior actual use occurred within only a limited area of the state. The Court has found no such authority in its own research.

▪ The Dickinsons' materials in support of the motion for preliminary injunction establish sales in only 13 Ohio counties between November 2, 1979 and June 30, 1981. Allied's date of registration was June 30, 1981. The Dickinsons have therefore only an arguable claim under section (b)(5) to these 13 counties. The question remains, however, whether the Dickinsons' proof of continuous use within the 13 counties is adequate to warrant preliminary injunctive relief for all of these counties. The Dickinsons' sales for all of 1979 were only $3,261.36.[17] The Dickinsons' proof relative to Montgomery County is illustrative. Montgomery County is listed as one of the 13 counties in which the Dickinsons had sales prior to Allied's date of registration, yet the invoices attached to the affidavit of Lula H. Dickinson show only one apparent sale for Montgomery County—a sale to David Jones of Dayton, Ohio. The total invoice is for $3.21. The Court is not able to conclude at this preliminary stage that this evidence is sufficient to satisfy the continuous prior use requirement of section (b)(5) for areas other than Franklin County.

The Dickinsons' proof with respect to non-sales activity under the Allied name is equally uninformative. Defendants have advertised in the Yellow Pages, but the Court is not advised as to the communities in which such advertising has occurred. The defendants also report the use of brochures, business cards, stationary, en-

---

17. See note 5, *supra.*

velopes, written announcements, and a business sign; but again, there is no indication as to the market in which these materials have been distributed.[18]

The Court concludes that the Dickinsons have established a substantial likelihood of success on the merits of their section (b)(5) defense at this early stage of the proceedings only in Franklin County. Their business office is located here and several of the invoices [19] describing their sales are addressed to businesses or persons in the Franklin County area.

The Dickinsons' prayer for preliminary injunctive relief is presumably premised upon state common law principles.[20] *Younker v. Nationwide Mutual Ins. Co.*, 175 Ohio St. 1, 191 N.E.2d 145 (1963). If only state law were applicable to the facts here presented, the Dickinsons would arguably be entitled to an injunction restraining the plaintiff's use of the Allied name in any part of the State of Ohio. *Id.* As noted above, however, the Court tentatively concludes that the overlap of State and Federal law on these facts requires that the Dickinsons be granted preliminary relief only with respect to Franklin County. Put another way, plaintiff Allied's federal registration of its mark on a date prior to the Dickinsons' continuous use in areas outside Franklin County, Ohio, secures the plaintiff's superior federal right.

Having concluded that the Dickinsons have in part established a substantial likelihood of success on the merits, the Court next turns to the questions of irreparable injury and the public interest. Both parties to this dispute agree that there is a substantial likelihood of confusion if both parties to this action provide telephone service under the Allied name in the same trading area. The Court is satisfied that permitting plaintiff Allied to trade in the Franklin County area would cause irrepara-

ble harm to the Dickinsons. *Dallas Cowboys Cheerleaders v. Pussycat Cinema*, 604 F.2d 200, 207 (2d Cir.1979), and would generate substantial confusion in the marketplace contrary to the public interest. Finally, the Court believes that the balance of harm weighs in favor of the limited preliminary relief to be granted herein. Plaintiff Allied is a large, well-established corporation which as of this date has made no substantial investment in Franklin County, Ohio. The Dickinsons' business development is miniscule by contrast. A failure to protect the Dickinsons' limited rights in the Allied mark might well lead to the demise of their business. For all of these reasons, the Court will grant in part the Dickinsons' motion for a preliminary injunction.

## ORDER

Plaintiff Allied Telephone Company is hereby enjoined from using the mark "Allied Telephone" or any similar mark in Franklin County, Ohio, during the pendency of this action or further order of the Court. This order shall take effect on the movant's posting of a $5,000 bond.

---

**18.** Defendants' Response to Plaintiff's Interrogatory # 14. The Court recognizes that the plaintiff's interrogatory did not specifically request the area in which promotional materials were employed by the defendants. However, as the movants, the defendants bear the burden of establishing a substantial likelihood of success on the merits of their section (b)(5) defense. Supplementary affidavits explaining the location and distribution of the promotional means were not provided.

**19.** Exhibits to Affidavit of Lula H. Dickinson.

**20.** See Defendants' Counterclaim, Second Claim for Relief.