**CONCORD LABORATORIES, INC., Plaintiff,**

v.

**CONCORD MEDICAL CENTER, Concord West Medical Center, Concord Medical Services, Ltd., Concord Medical Center of Indiana, Concord-Wisconsin, Inc. Defendants.**

No. 81 C 4073.

United States District Court, N.D. Illinois, E.D.

Oct. 12, 1982.

Homer J. Schneider, James B. Muskal, Leydig, Voit, Osann, Mayer & Holt, Ltd., Chicago, Ill., Sewall P. Bronstein, Robert F. O'Connell, Dike, Bronstein, Roberts, Cushman & Pfund, Boston, Mass., of counsel, for plaintiff.

Jeffrey D. Colman, Daniel J. King, Jenner & Block, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Plaintiff Concord Laboratories, Inc. is a Delaware corporation with its principal place of business in New Hampshire. Plaintiff was founded in 1971, and has sold health care products in substantial volume to hospitals and clinics throughout the country, and in particular in the Chicago area, since early 1972, bearing the trademark "Concord." Affidavit of John C. Ilg ¶¶ 2–3.

Plaintiff, it turns out, is not the only entity to have been using the name "Concord" in the last ten years. Defendant Concord Medical Center, Inc. is an Illinois corporation which began providing medical services through an ambulatory surgical facility located at 17 West Grand Avenue in Chicago. This facility specializes in women's health care. It has continuously provided services under the name "Concord Medical Center" since June 7, 1973 to persons in the Chicago metropolitan area and its contiguous counties. Affidavit of Sherry Walker ¶¶ 2–3. In 1978, persons having a two-thirds ownership interest in Concord Medical Center, Inc. formed defendant Concord West Medical Center, Ltd., which operates a facility in Westmont, Illinois, in order to provide Concord Medical Center's pa-

tients from the DuPage County, Illinois area with a more readily accessible facility. *Id.* ¶ 5. Defendant Concord Medical Services, Ltd. is an Illinois corporation also formed in 1978, which exists in order to provide physicians' services to patients at Concord Medical Center and Concord West Medical Center. *Id.* ¶ 5. Defendant Concord Medical Center of Indiana is a subsidiary of Concord Medical Center, Inc., and does not engage in any business or commerce, but exists merely to prevent the use of the name "Concord Medical Center" by any medical center in Indiana. *Id.* ¶ 6. Defendant Concord-Wisconsin, Inc. does not engage in any business or commerce either, but exists only to hold a piece of property. *Id.* ¶ 7.

Plaintiff applied for and received registration of the trademark "Concord" on October 29, 1974. Amended Complaint Ex. A. However, plaintiff remained blissfully ignorant of defendants' use of the name "Concord" until shortly after December 16, 1980 when defendants published the service mark "Concord Medical Center" for opposition in the United States Patent and Trademark Gazette. Motion for Summary Judgment as to Amended Complaint Ex. 3 at 13–14. Soon thereafter, plaintiff filed this lawsuit, alleging that defendants have infringed its registered trademark in violation of 15 U.S.C. § 1114 (1976), engaged in false designation of origin in violation of *id.* § 1125, and have violated federal and state trademark law. This court's jurisdiction rests on 28 U.S.C. §§ 1331, 1332, and 1338(a) (1976 & Supp. IV 1980), and 15 U.S.C. § 1121 (West Pamphlet June 1982). Pending before the court is defendants' motion for summary judgment.

Defendants contend that the Lanham Act provides a complete defense to this action, because defendants "innocently adopted"

the name "Concord." The Act provides that a party has a defense even where a registered trademark has become incontestable under 15 U.S.C. § 1065 (1976), as plaintiff claims its mark has, where the party can prove

> That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark under sub-section (c) of section 1062 of this title: *Provided, however,* that this defense or defect shall apply only for the area in which such continuous prior use is proved;

15 U.S.C. § 1115(b)(5) (1976).

■ The statutory language indicates, and courts have consistently held, that this defense contains four elements: (1) the alleged infringer adopted the mark without actual knowledge of the registrant's prior use,[1] (2) the alleged infringer has continuously used the mark, (3) the alleged infringer adopted the mark on a date prior to the registration, and (4) the alleged infringer uses the mark in the area for which prior continuous use has been proved. *See Foxtrap, Inc. v. Foxtrap, Inc.,* 671 F.2d 636, 640 (D.C.Cir.1982) (per curiam); *Value House v. Phillips Mercantile Co.,* 523 F.2d 424, 430 (10th Cir.1975); *Burger King of Florida, Inc. v. Hoots,* 403 F.2d 904, 907 (7th Cir. 1968); *Decatur Federal Savings & Loan Association v. Peach State Federal Savings & Loan Association,* 203 U.S.P.Q. 406, 415 (N.D.Ga.1978); *Modular Cinemas of America v. Mini Cinemas Corp.,* 348 F.Supp. 578, 581 (S.D.N.Y.1972); *Avon Shoe Co. v. David Crystal, Inc.,* 171 F.Supp. 293, 299–300 (S.D. N.Y.1959), *aff'd,* 279 F.2d 607 (2d Cir.), *cert. denied* 364 U.S. 909, 81 S.Ct. 272, 5 L.Ed.2d

---

1. Plaintiff argues defendants should have searched pending trademark applications and discovered its then-pending application prior to adopting the name "Concord," and that this failure to do so undermines defendants' argu-

ment. However, since the statute requires actual knowledge; it makes no difference whether defendants should have searched the applications and discovered plaintiff's prior use, the

244 (1960). *See also Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99 (7th Cir.1970).[2] If defendants can establish these elements, they are entitled to protection throughout the area of their prior continuous use, though they cannot expand beyond that area under the statutory proviso. *See Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.*, 477 F.2d 150, 157 (6th Cir.1973); *Burger King of Florida, Inc. v. Hoots*, 403 F.2d 904 (7th Cir.1968). Plaintiff argues that this principle means the defense does not apply to activities at Concord West Medical Center, which opened after plaintiff's federal registration. However, the area of prior continuous use is considered to be the "continuous market for the defendants' [ ] products..." *Id.* at 908.[3] The uncontroverted affidavit submitted by defendants indicated that the market served by the original medical center included the Chicago area and contiguous counties. The Concord West Medical Center is in that market, and therefore within the area of prior use. The fact that it constitutes an expansion of defendants' business within that area is no reason to exclude it from the ambit of § 1115(b)(5).

We do not hold that the stores or places of business operated by defendants should be limited to the conditions which existed [at the time defendants first adopted the trademark]. We think it would be reasonable to expect a store owner to repair and improve his place of business and it makes no difference whether such store be labeled market, super-market, or grocery store.

*Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 104 (7th Cir.1970). Defendants' uncontroverted affidavits indicate that defendants were serving the DuPage County market prior to the opening of Concord West Medical Center; the opening of Concord West was not an expansion of the area served by defendants. We hold that if Concord Medical Center is entitled to the § 1115(b)(5) defense, then Concord West Medical Center is entitled to the defense as well.[4]

 If defendants' § 1115(b)(5) defense is established, then plaintiff's statutory infringement claim fails. The statutory defense also would operate as a defense to plaintiff's false designation of origin claim under § 1125, *see Matador Motor Inns, Inc. v. Matador Motel, Inc.*, 376 F.Supp. 385

only relevant question is whether defendants in fact did know of plaintiff's prior use.

2. Plaintiff argues that the § 1115(b)(5) defense is unavailing since plaintiff's use of the name "Concord" in the Chicago area predates defendants', *i.e.*, the defense fails unless defendants' prior innocent adoption was "remote" from plaintiff's area of use. If plaintiff is making a statutory argument, it is erroneous. The statutory language nowhere requires remote use but merely innocent adoption. The statutory language is clear and "we can go no further than the plain terms of the statute." *Value House v. Phillips Mercantile Co.*, 523 F.2d 424, 430 (10th Cir.1975). However, it may be that plaintiff's argument deals not with its statutory infringement claim, but with its common law claim. If so, plaintiff bears a heavy burden of proving that its mark was sufficiently distinctive to warrant common law protection. Defendants have submitted material indicating this is not the case, *see* Reply Memorandum in Support of Motion for Summary Judgment as to Amended Complaint Ex. 1 & 2 which has not yet been controverted by plaintiff.

3. *See generally Wrist-Rocket Mfg. Co. v. Saunders Archery Co.*, 578 F.2d 727, 731–33 (8th

Cir.1978); *Jerrico, Inc. v. Jerry's, Inc.*, 376 F.Supp. 1079, 1084–85 (S.D.Fla.1974).

4. Concord Medical Center, Inc. is, however, a different corporate entity than Concord West Medical Center, Inc., and their ownership is not identical, though two-thirds of it is the same. However, as the statute indicates, Concord West is entitled to the § 1115(b)(5) defense if it is in privity with Concord Medical Center, Inc. Privity does not require total identity of ownership, but rather functional continuity, that the substance of the two businesses is the same. *See C-Thru Ruler Co. v. Needleman*, 190 U.S. P.Q. 93 (E.D.Pa.1976); *Hot Shoppes, Inc. v. Hot Shoppe, Inc.*, 203 F.Supp. 777, 780–81 (M.D.N.C.1962). Here there is functional continuity. Not only is there substantial overlap of ownership and administration, but there is a functional link in Concord Medical Services, Ltd. which provides physicians' services at both facilities. All these facts are uncontroverted, and they establish privity. We need not decide whether the Indiana and Wisconsin defendants are privies, since they have not engaged in any possibly infringing activity.

(D.N.J.1974); *Steak & Brew, Inc. v. Beef & Brew Restaurant, Inc.,* 370 F.Supp. 1030, 1035–37 (S.D.Ill.1974); *see also United States Jaycees v. Chicago Junior Association of Commerce & Industry,* 505 F.Supp. 998, 1001–02 (N.D.Ill.1981); *Koffler Stores, Ltd. v. Shoppers Drug Mart, Inc.,* 434 F.Supp. 697, 703–04 (E.D.Mich.1976), *aff'd mem.,* 559 F.2d 1219 (6th Cir.1977)[5] and plaintiff's state law claims, *see Mister Donut of America, Inc. v. Mr. Donut, Inc.,* 418 F.2d 838, 844–45 (9th Cir.1969); *cf. Burger King of America, Inc. v. Hoots,* 403 F.2d 904 (7th Cir.1968) (state trademark rights can be no broader than those afforded by § 1115(b)).[6] Thus, it is imperative to examine defendants' claim that they are entitled to summary judgment on the § 1115(b)(5) defense.

■ There is no dispute that defendants have continuously used the name "Concord," that they adopted the name prior to plaintiff's federal registration, and, as we have earlier held, defendants' use is confined to the area of its prior use. The only real dispute is whether defendants adopted the trademark without knowledge of plaintiff's prior use. Plaintiff argues that there is an issue of fact on this question. It points out that plaintiff sold its medical supplies during 1972 under the name "Concord" to a hospital the staff of which included a founder and officer of Concord Medical Center, Inc. From this, plaintiff argues, it can be inferred that this officer knew of plaintiff's use of the name "Concord" prior to defendants' adoption of it. However, this officer, Dr. Borzorgi, was on the *medical staff* of the hospital. There is no particular reason for a medical staff member to have known the trade name of the rather pedestrian medical supplies sold by plaintiff.[7] Moreover, materials submitted by plaintiff indicate that plaintiff's practice was to discuss its products with the *nursing and purchasing staffs* of hospitals. Affidavit of John C. Ilg ¶ 6. Dr. Borzorgi was on neither. It is sheer speculation that Dr. Borzorgi was aware of plaintiff's prior use of its trademark when defendants adopted the mark.

---

5. Judge Cohen, writing in the *Matador* case, elaborated,

This court feels compelled to hold that if innocent prior adoption in a particular area has been proved as a defense to a service mark infringement action, then that innocent prior adoption must also serve as a defense to a section 1125(a) action.

A brief examination of the policies involved in the two statutes will illustrate the absence of any contraction in this holding. The trademark statutes were devised to: 1) protect the businessman in his property rights to the mark, and 2) protect the public. Section 1125(a) was also developed to protect consumers and competitors against all forms of misdescription or misrepresentation of products and services in commerce. Obviously, the policies of the two enactments are virtually the same. The difference lies in the initiation point of the protection. The general trademark statutes protect a federally registered trademark from a statutorily defined infringement, while Section 1125 protects one competitor from the actions of another amounting to a form of unfair competition. Just so, as in some cases, a finding of infringement of a service mark will *a fortiori* lead to a violation of Section 1125(a), so too will a finding of innocent adoption of a service mark lead to the almost inescapable conclusion of no violation of Section 1125(a). It would be incongruous for this Court to find that defendant innocently adopted plaintiff's mark, thereby giving defendant the right to use that mark in the area of continuous prior use, and then find that defendant has engaged in a false designation or representation or origin.

376 F.Supp. at 390 (citations omitted). We agree. Section 1115(b)(5) represents a policy judgment that an innocent adopter should be allowed to use a mark. Section 1125 should not be construed to undermine that policy.

6. This might be a different case if the record showed some likelihood of confusion of deception resulting from defendants' use of the mark. If so, state law might protect plaintiff despite the existence of a Lanham Act defense. *See Golden Door, Inc. v. Odisho,* 646 F.2d 347, 351–52 (9th Cir.1980). However, the record reveals no such likelihood. Motion for Summary Judgment as to Amended Complaint Ex. 3 at 9–11.

7. In 1972 and 1973, plaintiff sold collection kits, ureteral and urinary drainage systems, foley trays, glass syringe kits, catheters, trach care trays, and infant feeding tubes under the name "Concord." Motion for Summary Judgment as to Amended Complaint Ex. 3 at 4–5.

However speculative it may be, the inference that Dr. Borzorgi knew of plaintiff's prior use is not an entirely unfair one. Moreover, plaintiff has not yet been able to take his deposition, or the deposition of many other of defendants' officers and founders. In a case such as this, where the crucial issue involves questions of knowledge and intent so that the material evidence is almost entirely in the hands of the defendants, and where plaintiff can establish a fair likelihood that it can obtain material evidence through discovery, we think it unfair to grant defendants summary judgment until plaintiff has had a full opportunity to determine what, if anything, defendants knew about plaintiff's use of the trademark. If, after discovery, plaintiff can generate no evidence that Dr. Borzorgi or any other of defendants' officers came into contact with plaintiffs' "Concord" products prior to their adoption of that name, then defendants will be entitled to summary judgment. However, we think plaintiff is entitled to depose Dr. Borzorgi and the others in order to learn what they knew before summary judgment is granted on the issue of defendants' knowledge. *See generally American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 353 (2d Cir.1981); Fed. R.Civ.P. 56(f).

Defendants' motion for summary judgment is denied without prejudice to its renewal at the close of discovery. The order staying discovery pending ruling on the motion for summary judgment is dissolved.